# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

BELINDA LEE MALEY, individually,　　　)
and on behalf of the ESTATE of　　　　　)
MATTHEW CLINTON LOFLIN,　　　　　)
deceased,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　) C/A No.: CV 416-060
　　　　　　　　　　　Plaintiffs,　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　) JURY TRIAL DEMANDED
CORIZON HEALTH, INC., a Delaware　　)
Corporation; CORIZON, LLC., a　　　　)
Missouri Limited Liability Company;　　)
CHATHAM COUNTY, a Georgia　　　　)
County; ROY HARRIS, in his capacity　)
as Acting CHATHAM COUNTY　　　　)
SHERIFF; Estate of AL ST　　　　　　)
LAWRENCE; JOHN WILCHER,　　　　)
individually and in his capacity as　　　)
CCDC Jail Administrator; SCOTT H.　　)
KENNEDY, M.D.; ADAMAR　　　　　)
GONZALEZ, M.D.; VIRGINIA O'NEILL,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendants.　　)



## COMPLAINT

COMES NOW, Plaintiff, Belinda Lee Maley, individually and on behalf of the

Estate of Matthew Clinton Mr. Loflin, deceased, by and through counsel, and files

this action against the above-named Defendants, respectfully showing the Court as

follows:

# INTRODUCTION

1.

This is a civil rights action for relief from violations of rights guaranteed by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, Title 42, Section 1983 of the United States Code, the laws of the United States, and the laws of the State of Georgia.

2.

Matthew Loflin died because Defendants were deliberately indifferent to his serious medical need.  Corizon, by and through its agents, chose to protect its own profits rather than preserve Mr. Loflin's life.  The Chatham County Defendants, in turn, chose to ignore Mr. Loflin's cries for help and instead protected their private contractor.

3.

Defendant Corizon Health is contractually obligated to provide medical care to inmates detained at Chatham County Detention Center ("CCDC").

4.

For Fiscal Year 2014, Corizon's agreement with the County, structured according to an average daily population ("ADP") of 1650 inmates, provided that Corizon would be paid $5.07 million to provide medical services in the jail.  Under the terms of the agreement, Corizon was compensated, according to an annual base cost schedule, at $422,852 per month, with an additional per diem premium if the ADP exceeded 1650. The cost to the taxpayers of providing medical care was approximately $256 per inmate per month.

5.

Whatever Corizon does not spend providing medical care it retains as profit under the terms of the agreement.

6.

The average daily population of the CCDC for calendar year 2014, as reported by the Chatham County Sheriff to GBI/GCIC was less than 1500 inmates. This 10% decrease in actual ADP over projected ADP should have corresponded to a 10% increase in Corizon's retained profits, while preserving Corizon's ability to fulfill its constitutional and contractual obligations to the inmates detained at the CCDC.

7.

The "keep what you do not spend" compensation structure provides Corizon with a direct, dollar-for-dollar incentive to deny medical care to inmates.

8.

During 2014, Corizon's executive and administrative teams deliberately engaged in a pattern of delaying medically necessary treatment for as long as possible in order to avoid responsibility for the costs of basic medical care. The primary motivation for Corizon's conduct was to enlarge its profit margin.

9.

At the 2014 Corizon annual meeting a Corizon utilization management official gave a presentation lasting approximately 1.5 hours. The focus of said presentation was how to save money. One of the topics emphasized was minimizing the number of emergency room referrals of jail inmates.

10.

Also at the 2014 Corizon annual meeting, the Corizon CEO, Dr. Woodrow Myers, took the stage. Myers told the audience that the primary function of Corizon was to make money and that he was not embarrassed to say it.

11.

Corizon's strategy to increase profit at the expense of patient care included Corizon's regional managers and executives denying local providers' requests for outpatient referral.   This practice directly contradicts CCDC inmates' constitutionally protected right to receive treatment for serious medical needs.

12.

Matthew Loflin was one such inmate.  After being detained at CCDC and evaluated by local staff including the site medical director, Mr. Loflin was identified as a patient in need of immediate hospitalization due to a serious cardiac condition.

13.

Corizon's Southeast Regional Medical Director, first Scott H. Kennedy then Adamar Gonzalez, repeatedly denied local staff requests to have Mr. Loflin sent to the hospital because any hospitalization had the potential to undermine Corizon's profit margin.

14.

As a proximate result of Corizon's preference for profits over patients, Matthew Loflin died. His mother, Belinda Maley, now brings this case on behalf of herself and on behalf of Mr. Loflin's Estate, to redress Mr. Loflin's wrongful death and Corizon's deprivation of Mr. Loflin's rights as guaranteed by the Constitution and laws of the United States and the state of Georgia.

## JURISDICTION

15.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as to the Plaintiffs' claims that arise under the Fourth, Eighth, and Fourteenth Amendments to the Constitution and laws of the United States, to wit 42 U.S.C. § 1983, and pursuant to § 1343, to redress the deprivation, under color of state law, of Plaintiffs' rights guaranteed by Constitution of the United States pursuant to § 1983 and § 1988.

16.

This Court also has supplemental jurisdiction over the state law claims, which arise from the same facts and circumstances, pursuant to 28 U.S.C. § 1367.

17.

Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

### 18.

Plaintiff Belinda Lee Maley (hereinafter, "Belinda Maley," "Ms. Maley," or "Plaintiff") is the duly-appointed Administratrix of the Estate of Matthew Clinton Loflin, Deceased, Liberty County Probate Case No. 2014-A-204, and at all times relevant is, and was, a citizen of the United States of America, residing in the state of Georgia.

### 19.

Belinda Lee Maley is the mother of Matthew Loflin.

### 20.

In bringing this action against the above-named Defendants, Belinda Maley acts in her individual capacity as the mother of Matthew Loflin and in her representative capacity for the benefit of, and on behalf of, the Estate of Matthew Loflin, and the Decedent's next of kin.

### 21.

Prior to his death, Decedent Matthew Loflin was a citizen of the United States of America, residing in the state of Georgia, and entitled to the protections of the Constitution and laws of the United States and the Constitution and laws of the State of Georgia.

22.

Defendants CORIZON HEALTH, INC. and CORIZON, LLC—together, the "Corizon Defendants"—are Delaware and Missouri entities, respectively.  Corizon Health, Inc. contracted with Chatham County, Georgia to provide physical and mental health care, screening, assessment, treatment, and attention to those inmates detained at the CCDC.  Both Corizon Defendants may be served at their principal office address, 103 Powell Court, Brentwood, Tennessee 37027.

23.

Defendant CHATHAM COUNTY ("the County") is a political subdivision of the State of Georgia. The County entered into an agreement with the Corizon Defendants to provide inmate healthcare services at the CCDC.

24.

ROY HARRIS is a resident of the state of Georgia and can be served with process at 1050 Carl Griffin Dr., Savannah, GA 31405.  He is sued in his official capacity as Acting CHATHAM COUNTY SHERIFF.

25.

JOHN WILCHER is a resident of Chatham County and the state of Georgia. He is sued individually and in his capacity as former Chatham County Detention Center Jail Administrator.

26.

At all times relevant to this Complaint, Al St Lawrence was Chatham County Sheriff. St Lawrence died on November 24, 2015. His estate, the ESTATE OF AL ST LAWRENCE is sued for claims arising from actions taken by St Lawrence in his individual capacity.

27.

SCOTT H. KENNEDY, M.D. is an individual and a resident of the state of Florida. At all times relevant to this Complaint, Dr. Kennedy was Regional Medical Director for Corizon. Upon information and belief, Dr. Kennedy may be served with process at 3217 Coventry N., Safety Harbor, Florida 34695.

28.

ADAMAR GONZALEZ, M.D. is an individual, and resident of the state of Florida, who at all times relevant to this Complaint was Regional Medical Director for Corizon. Upon information and belief, Dr. Gonzalez may be served with process at 2889 Spring Breeze Way Kissimmee, Florida 34744-9269.

29.

Upon information and belief, Defendant VIRGINIA O'NEILL is a resident of Chatham County and the state of Georgia, with a permanent residence at 3 South Point Cross, Savannah, Georgia 31411. At all times relevant to this Complaint, Defendant O'Neill was Corizon's Healthcare Service Administrator ("HSA") at Chatham County Detention Center.

## FACTUAL ALLEGATIONS

### 30.

The Chatham County Sheriff's Office ("CCSO") and Chatham County ("the County") jointly operate the Chatham County Detention Center ("CCDC").

### 31.

Both the CCSO and the County have a legal obligation to provide medical care to the inmates who are either detained or incarcerated at the CCDC.

### 32.

The County contracted with Corizon Health, Inc. ("Corizon") for Corizon to provide medical care to the inmates at the CCDC.

### 33.

On February 6, 2014, Mr. Loflin was arrested for non-violent drug charges and transported to the CCDC.

### 34.

In mid-February, Mr. Loflin began losing consciousness in his jail cell. Deputies were called to his cell on February 10 for a "Signal 55" (i.e. unconscious inmate) and again on February 11 for a second Signal 55.  After each of these initial events, CCSO staff responded, and Corizon staff evaluated Mr. Loflin's condition.

### 35.

On February 21, 2014, Corizon staff collected a medical history from Mr. Loflin and performed a physical exam on him.

36.

Also on February 21, 2014, Corizon staff administered an electrocardiogram ("ECG") of Mr. Loflin's heart activity. The ECG indicated that Mr. Loflin's heart rate was elevated (125 bpm) and showed results consistent with congestive heart failure. Despite this result, Corizon staff took no further action.

37.

On March 3, 2014, Mr. Loflin complained to CCSO staff that his heart was racing and that he could not sleep. A Corizon nurse, "V. Black," responded. She noted a heart rate of 140 bpm and that Mr. Loflin had signs of syncope (i.e. fainting). Despite these findings, Nurse Black merely marked the file to be reviewed later but took no further action. She left Mr. Loflin in his cell.

38.

On March 4, 2014, Mr. Loflin again complained of passing out, anxiety, and a racing heart rate, stating further that he needed to be seen by the medical staff. A second Corizon nurse, "M. Stokes," responded. Nurse Stokes made no notation of Mr. Loflin's elevated heart rate or signs of syncope. Instead, she scheduled a *mental* health appointment for March 6, 2014 and left Mr. Loflin in his cell.

39.

On March 5, 2014, CCSO staff called a third Signal 55 for Mr. Loflin after he became unconscious and appeared to be having difficulty breathing. Nurse Stokes again responded, only to note that the *mental* health appointment she scheduled the day before was still on the calendar. She provided no further medical care and left Matthew in his cell.

40.

At Mr. Loflin's mental health appointment on March 6, 2014, Corizon staff prescribed medication for anxiety. Mr. Loflin refused to take this medication, however, because he knew that he did not have a mental health problem. He had a serious physical medical need.

41.

On March 19, 2014 and March 20, 2014, Mr. Loflin again became unconscious in his cell. CCSO staff called Signal 55s on both days.

42.

On March 19, Nurse "D. Thrift" responded. Rather than take any action, Nurse Thrift merely marked the file to be reviewed later and left Mr. Loflin in his cell.

43.

On March 20, Mr. Loflin asked for medical care and stated "no one will help me." Nurse "K. Smith" scheduled Mr. Loflin for an appointment with a doctor, gave Mr. Loflin an additional blanket, but provided him no further medical care. A copy of the March 20, 2014 "General Sick Call" form is attached hereto as Exhibit "A."

44.

On March 20, 2014, Mr. Loflin had a chest x-ray which was read by Dr. Merrill Berman. The results showed that Mr. Loflin had an enlarged heart (cardiomegaly) and pneumonia. Mr. Loflin's chart also notes that he was "coughing up blood," had a heart rate of 121, and had swelling of his feet. All of these results were consistent with congestive heart failure. Despite these results, Corizon staff took no further action.

45.

On March 22, 2014, Mr. Loflin complained to staff at the CCSO and Corizon that they were "covering up symptoms and not treating them."

46.

On March 24, 2014, a woman named Betty McRae called Ms. Maley. She informed Ms. Maley that her husband, Darrell McRae, was in the cell next to Mr. Loflin. Mr. Loflin had asked Mr. McRae to have his wife get in touch with Ms. Maley and inform her that he (Mr. Loflin) was not being treated, needed to go to the hospital, and was afraid he was going to die. Mr. McRae told his wife that Mr. Loflin was yelling out for help but was receiving no help, and that this had been going on for some time.

47.

For more than one month after the ECG report indicated Mr. Loflin was suffering from congestive heart failure, Corizon's nursing staff prevented Mr. Loflin from being transferred to the medical unit. Finally, on or about March 24, 2014 Mr. Loflin was transferred to the medical unit.

48.

On March 24, Mr. Loflin was evaluated by Dr. Charles Pugh, the Corizon doctor at the CCDC.

49.

Upon his initial evaluation, Dr. Pugh determined that Mr. Loflin needed to be sent to the hospital.

50.

Corizon's policies, however, did not permit Dr. Pugh to send Mr. Loflin to the hospital without the approval of the Regional Medical Director, Scott Kennedy.

51.

Dr. Kennedy works in the Corizon regional office located in Punta Gorda, Florida.

52.

As Regional Medical Director for Corizon, Kennedy convenes a conference call at least once per week with the Site Medical Directors reporting to him what patients have been sent to outside medical providers.

53.

Kennedy uses these calls to "woodshed" the Site Medical Directors about such patients and to determine if those patients can be released on bond or brought back from the hospital in order to reduce costs.

54.

Kennedy is compensated with both a base salary and performance incentives. Kennedy's pay increases as Corizon's profits increase.

55.

In 2014 Kennedy received such performance incentives and casually joked that he would be able to "buy some fine scotch" with the increased pay he received.

56.

Dr. Kennedy never personally observed, evaluated, or interacted with Mr. Loflin.

57.

Kennedy overruled Dr. Pugh and refused to allow Mr. Loflin to be sent to the hospital. Dr. Kennedy would only approve Mr. Loflin being referred for an outpatient echocardiogram.

58.

Dr. Pugh, Lynne Williams (who was the Corizon Physician Assistant), and Betty Riner (who was the Corizon Advanced Practice Registered Nurse), all informed their supervisor, Virginia O'Neill (the Corizon Health Services Administrator), that Mr. Loflin needed hospitalization.

59.

Defendant O'Neill refused to intervene, and Mr. Loflin was not sent to the hospital.

60.

On or about March 26, 2014, Ms. Maley called the jail to schedule a visit with her son. She was informed that she could not see him until April 1, 2014 because the unit only allowed visitation on Tuesdays.

61.

On March 27, 2014, Mr. Loflin was sent for an outpatient echocardiogram and testing. The test was performed. Mr. Loflin was returned to the CCDC. The results were sent to Dr. Pablo Elizalde, a cardiologist, for evaluation.

62.

On the same day, Nurse Susan West wrote a progress note that indicated that Mr. Loflin was faking his illness by "wretching (sic) neck all positions appearing to try to get himself to cough."

63.

The March 27 notes further indicate that Mr. Loflin "stood up at the flap yelled because he wants to know what we are gonna do for him that he can't breathe...observed yelling and stating that he has a heart condition."   A copy of said Progress Notes are attached hereto as Exhibit "B."

64.

On March 28, 2014, Dr. Elizalde informed Dr. Pugh that the results of the echocardiogram were consistent with the diagnosis of congestive heart failure.  Mr. Loflin had an Ejection Fraction of 10-15%, and his medical condition was acute.

65.

Dr. Pugh informed Dr. Kennedy of the results and requested authority to send Mr. Loflin to the hospital.  Dr. Kennedy again refused to allow Mr. Loflin to be sent to the hospital.  A copy of Dr. Pugh's chart notes for March 28, 2014, are attached hereto as Exhibit "C."

66.

Said chart notes read in pertinent part: "Spoke with mother after hipaa signed to report gravity of situation;" "Dr. Kennedy has agreed with outpatient cardiology referral, not ER;" and "Spoke with Dr. Elizalde, cardiologist, and he will see soon, but admits there's probably not much more he can do for him."

67.

Construing those sentences together, it is clear that Dr. Pugh knew Mr. Loflin's condition was grave but that Dr. Pugh was denied the ability to send Mr. Loflin to the ER. Rather, Dr. Pugh was only permitted to send Mr. Loflin back to Dr. Elizalde. However, Drs. Elizalde and Pugh didn't think there was much more that could be done in Dr. Elizalde's office than could be done at the jail.

68.

At 22:53 on March 28, 2014, Nurse Debra Thrift wrote a progress note indicating that Mr. Loflin stated he was in constant pain, grabbed his chest, and rated his pain as a 10 on the 10 scale.  Mr. Loflin also said to the nurse, "[I am] not going to make it."

69.

On March 29, 2014, Nurse Debra Thrift wrote another progress note indicating that Mr. Loflin was "demanding to be taken to a hospital."   A copy of the March 28 and March 29 Progress Notes are attached hereto as Exhibit "D."

70.

On April 1, 2014, Ms. Maley was permitted to visit with her son.  There was a significant delay in Mr. Loflin appearing on the video screen. Maley was informed by the desk Sergeant that the staff were having "difficulties getting [Mr. Loflin] up" for the visit.

71.

Ms. Maley was shocked at Mr. Loflin's appearance and knew that he was deathly ill. He was disoriented, pale, and bloated. Mr. Loflin told his mother that he needed to be taken to the hospital, that he did not want to die in jail, and that he loved her.

72.

Ms. Maley and her husband, Joe Maley, immediately began demanding that Mr. Loflin be sent to the hospital.

73.

The Maleys spoke with Col. John Wilcher and explained the situation to him. Col. Wilcher told them to speak with Sheriff Al St Lawrence. Sheriff St Lawrence's assistant, Gretchen Derryberry, told the Maleys she would pass the information on to the Sheriff.

74.

Sheriff St Lawrence did not respond to the Maleys.

75.

Between March 24 and April 2, the Maleys placed or received twenty-three phone calls to the CCSO in their attempt to have Mr. Loflin sent to the hospital. However, despite the efforts of the Maleys, Mr. Loflin was not sent to the hospital.

76.

On April 2, 2014, Nurse Susan West made entries in Mr. Loflin's chart. Those entries show that at 00:30 Mr. Loflin stated that he "needed to go to the hospital" and "you all don't know what you are doing." At 02:41 Mr. Loflin demanded to go to the hospital. Nurse West told him no. CCSO Officer Dickens was present for this event. Mr. Loflin said "just wait 'til my family finds out you didn't take me to the hospital." Nurse West provided him with no further treatment and "left him fussing." A copy of said notes are attached hereto as Exhibit "E."

77.

Each morning from March 28 through April 7, Dr. Pugh, Ms. Williams, and Ms. Riner informed their supervisor, Virginia O'Neill, that Mr. Loflin needed hospitalization.

78.

Each day, Mr. Loflin's medical condition declined.

79.

Each day, Defendant O'Neill refused to intervene and refused to send Mr. Loflin to the hospital.

80.

Dr. Pugh determined that, because Dr. Kennedy would only approve a cardiology consult, he could send Mr. Loflin to the cardiologist and have the cardiologist admit Mr. Loflin to the hospital.

81.

Thus, on April 7, 2014, Mr. Loflin was sent to Cardiovascular Consultants of Savannah. Dr. Pugh notified them that Mr. Loflin was coming and needed hospitalization.

82.

Upon his arrival at Cardiovascular Consultants, Dr. Brett Burgess immediately sent Mr. Loflin to the Memorial Hospital Emergency Department.

83.

While in the emergency department Mr. Loflin's blood pressure declined, and he coded multiple times. After intensive medical treatment, Mr. Loflin was eventually stabilized cardiologically, but he had suffered irreversible brain damage.

84.

Life support was withdrawn on April 24, 2014, and Mr. Loflin died that night. A copy of the "Death Summary" written by Dr. Burgess is attached hereto as Exhibit "F."

## COUNT I — Violation of 42 U.S.C.A. § 1983
### (Sheriff's Policy or Custom of Deliberate Indifference)

85.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 84 as fully set forth above.

86.

Count I is brought against Defendant Harris in his official capacity as Acting Sheriff of Chatham County, pursuant to 42 U.S.C. § 1983, for deliberate indifference to the critical medical needs of Mr. Loflin, as an individual with an congestive heart failure that required testing and treatment to prevent substantial health deterioration and even death.

87.

The Sheriff knew in March 2014 that Mr. Loflin had a serious medical condition and that if the condition was not adequately monitored and addressed it could result in serious irreparable harm and even death.

88.

The Sheriff adopted a custom or practice of supporting Defendant Corizon's decision to avoid providing adequate medical care to inmates detained at CCDC.

89.

Despite knowledge of Mr. Loflin's serious medical needs, the Sheriff was deliberately indifferent to those serious medical needs in failing to direct Defendant Corizon to provide the necessary medical care and treatment to Mr. Loflin.

90.

The County and the CCSO have been aware that Corizon is deliberately indifferent to the medical needs of the inmates, provides poor care, and regularly violates the law in the execution of its contract with the County.

91.

At all times relevant to this Complaint, it was the Sheriff's widespread custom, policy, practice, and/or procedure to support Corizon's decisions to deny medical treatment of, or be deliberately indifferent to the serious medical needs of Plaintiff, and other prisoners/detainees incarcerated at the Chatham County Detention Center, who had serious and potentially expensive medical problems.

92.

As a direct and proximate result of the Sheriff's institutional outright denial of medical treatment and/or deliberate indifference toward Mr. Loflin's serious medical needs, Mr. Loflin suffered great physical injury, pain, discomfort and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

93.

As a result, Mr. Loflin suffered damages in an amount be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest, and further relief as the Court deems appropriate.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of Defendant Harris, as set forth above, violate rights secured to Mr. Loflin by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Plaintiff, (3) the Court require Defendant Harris to pay the legal costs and expenses herein including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

## COUNT II — Violation of 42 U.S.C. § 1983
### (Corizon's Deliberate Indifference to Mr. Loflin's Serious Medical Needs)

94.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 93 as fully set forth above.

95.

Count II is brought against Corizon Defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Mr. Loflin, as an individual with a congestive heart failure who required testing and treatment to prevent substantial health deterioration and even death.

96.

Corizon and/or its employees or agents knew in March 2014 that Mr. Loflin had a serious medical condition and that if the condition was not adequately monitored and addressed it could result in serious irreparable harm and even death.

97.

By March 20, 2014, Corizon and/or its employees or agents, knew that Mr. Loflin was suffering from severe cardiologic problems and had lost the ability to walk.

98.

Despite knowledge of Mr. Loflin's serious medical needs, Corizon and its employees or agents were deliberately indifferent to those serious medical needs in failing to provide the necessary medical care and treatment to Mr. Loflin.

99.

Corizon and its employees or agents knew that taking no action and insufficient action could result in the rapid and permanent deterioration of Mr. Loflin's health and even his death.

100.

At all times relevant to this Complaint, it was Corizon's widespread custom, policy, practice, and/or procedure to outright deny medical treatment of, or be deliberately indifferent to the serious medical needs of, Mr. Loflin and other inmates detained or incarcerated at the Chatham County Detention Center who had serious and potentially expensive medical problems.

101.

As a direct and proximate result of Corizon's institutional outright denial of medical treatment and/or deliberate indifference toward Mr. Loflin's serious medical needs, Mr. Loflin suffered great physical injury, pain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

102.

As a result, Mr. Loflin suffered damages in an amount be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest, and further relief as the Court deems appropriate.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of Defendant Corizon, as set forth above, violate rights secured to Mr. Loflin by the Fourteenth Amendment to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Loflin, (3) the Court require Defendant Corizon to pay the legal costs and expenses herein including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

### COUNT III — Violation of 42 U.S.C. § 1983
(Individual Corizon Defendants)

103.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 97 as fully set forth above.

104.

Count III is brought against Defendants Kennedy, Gonzalez, and O'Neill pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Mr. Loflin, as an individual with congestive heart failure that required testing and treatment to prevent substantial health deterioration and even death.

105.

Each individual Corizon defendant knew in March 2014 that Mr. Loflin was suffering from a serious medical condition and that if the condition was not adequately monitored and addressed it could result in serious irreparable harm and even death.

106.

As a direct and proximate result of the individual Corizon Defendants' denial of medical treatment and/or deliberate indifference toward Mr. Loflin's serious medical needs, Mr. Loflin suffered great physical injury, pain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

107.

As a result, Mr. Loflin suffered damages in an amount be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest and further relief as the Court deems appropriate.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of the individual Corizon Defendants, as set forth above, violate rights secured to Mr. Loflin by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Loflin, (3) the Court require individual Corizon Defendants to pay the legal costs and expenses herein

including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

## COUNT IV — Violation of 42 U.S.C. § 1983
### (Individual County Defendants)

108.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 107 as fully set forth above.

109.

Count IV is brought against Defendants Estate of Al St Lawrence and John Wilcher pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Mr. Loflin, as an individual with congestive heart failure who required testing and treatment to prevent substantial health deterioration and even death.

110.

Each individual County defendant knew in March 2014 that Mr. Loflin was suffering from a serious medical condition and that if the condition was not adequately monitored and addressed it could result in serious irreparable harm and even death.

111.

As a direct and proximate result of the individual County Defendants' denial of medical treatment and/or deliberate indifference toward Mr. Loflin's serious medical needs, Mr. Loflin suffered great physical injury, pain, discomfort, and mental anguish in violation of his constitutional rights guaranteed by § 1983 and the Fourteenth Amendment.

### 112.

As a result, Mr. Loflin suffered damages in an amount be determined at trial. Plaintiff also seeks reasonable attorney's fees and costs, pre-judgment interest and further relief as the Court deems appropriate.

WHEREFORE, Plaintiff respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of the individual County Defendants, as set forth above, violate rights secured to Mr. Loflin by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Loflin, (3) the Court require individual County Defendants to pay the legal costs and expenses herein including reasonable attorney's fees, and (4) that the Court grant such further relief as it deems appropriate.

### COUNT V — Wrongful Death
(All Defendants)

### 113.

Plaintiff re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 112 as fully set forth above.

### 114.

As is more fully described above, Mr. Loflin's death was preventable. Yet each of the defendants herein failed or refused to fulfill their obligation to provide him with medical care.  Mr. Lofin died as a result of the criminal, intentional, and negligent acts of each of the Defendants.

### 115.

As a direct and proximate result of the Defendants' wrongful acts, Matthew Loflin died by homicide.

### 116.

Mr. Loflin's death was a wrongful death within the meaning of the Georgia Wrongful Death Act, Ga. Code Ann. § 51-4-1, *et seq*. Section 51-4-4 provides a right of action for the wrongful death of a child killed by homicide.

### 117.

Under Ga. Code Ann. § 19-7-1(c)(2)(A), Plaintiff Belinda Maley is a parent entitled to prosecute this right of action.

WHEREFORE, Belinda Maley seeks judgment against the Defendants, jointly and severally, for: (a) the full value of the life of Matthew Loflin; (b) the costs of suit and reasonable attorney's fees; and (c) that the Court grant such further relief as it deems appropriate.

{Signatures appear on following page.}

RESPECTFULLY SUBMITTED, this 22nd day of February, 2016

/s/ William R. Claiborne
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorneys for Plaintiff*

THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com

/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*

S. WESLEY WOOLF, P.C.
408 East Bay Street
Savannah, Georgia 31401
(912) 201-3696 Telephone
(912) 236-1884 Facsimile
woolf@woolflawfirm.net