IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

U. S. DISTRICT COURT
Southern District of GA
Filed In Office

9/28/2017

Deputy Clerk

BELINDA LEE MALEY, individually
and on behalf of the Estate of
Matthew Clinton Loflin,
deceased; and GENE LOFLIN,
individually,

    Plaintiffs,

v.

CORIZON HEALTH, INC., a
Delaware Corporation; CORIZON,
LLC, a Missouri Limited
Liability Company; CHATHAM
COUNTY, a Georgia County; ROY
HARRIS; ESTATE OF AL ST.
LAWRENCE; JOHN WILCHER,
individually and in his
official capacity as Jail
Administrator; SCOTT KENNEDY,
M.D.; ADAMAR GONZALEZ, M.D.;
and VIRGINIA O'NEILL;

    Defendants.

CASE NO. CV416-060

## O R D E R

Before the Court are the Defendants John Wilcher and Al St. Lawrence's Motion for Summary Judgment (Doc. 52), the parties' Joint Consent Motion to Dismiss Defendants Virginia O'Neill, Chatham County, and John T. Wilcher in his Official Capacity (Doc. 87), and the parties' Stipulation of Dismissal of Corizon, LLC (Doc. 65). For the following reasons, Defendants John Wilcher and Al St. Lawrence's Motion for Summary Judgment is **GRANTED IN PART** and **DISMISSED AS MOOT IN PART**. Additionally, the

parties' Consent Motion to Dismiss Defendants Virginia O'Neill, Chatham County, and John Wilcher in his Official Capacity (Doc. 87) and the parties' Joint Stipulation of Dismissal of Corizon, LLC (Doc. 65) are **GRANTED**.

## BACKGROUND

This case arises out of the incarceration and subsequent death of Matthew Loflin in 2014. (Doc. 1.) On February 6, 2014, Loflin was arrested on drug charges. (Doc. 52, Attach. 2 at 1.) He was held as a pre-trial detainee at the Chatham County Detention Center ("CCDC"). (Id.) At the time of Loflin's detention, Defendant Corizon Health Inc. ("Corizon") provided medical services to detainees at the CCDC pursuant to a contract with Chatham County. (Id.) At all relevant times, Dr. Charles Pugh was the acting onsite medical director employed by Defendant Corizon. (Id., Attach. 5 at 20.) As medical director, Dr. Pugh provided direct patient care and monitored healthcare expenses to ensure care was provided in a cost efficient manner. (Id. at 21.) Defendant Virginia O'Neill was also employed by Defendant Corizon as the health services administrator at CCDC. (Doc. 68, Attach. 2 at 2). As health service administrator, Defendant O'Neill had a variety of non-clinical duties. (Id.)

After his arrest and arrival at CCDC, Loflin's health began to deteriorate. (Doc. 52, Attach. 2 at 2.) Dr. Pugh believed that Loflin suffered from pneumonia. (Id., Attach. 5 at 28.)

2

Between February 7, 2014 and March 23, 2014, Loflin had at least 16 encounters with Corizon medical staff. (Id., Attach. 2 at 2.) On March 24, 2014, Dr. Pugh became concerned for Loflin's health and decided to admit him to the CCDC medical infirmary. (Id., Attach. 5 at 28.) In the infirmary, Loflin was provided with around the clock medical care. (Id. at 2.)

As Loflin's condition continued to worsen, Dr. Pugh ordered that Loflin obtain an echocardiogram on March 26, 2014. (Id. at 17.) The echocardiogram revealed that Loflin had "very poor heart function" that indicated a "fairly severe cardiomyopathy." (Id. at 17, 26.) After obtaining these results, Dr. Pugh believed that Loflin needed more intensive care than could be provided in the CCDC infirmary. (Id. at 17.) Dr. Pugh's position at the CCDC did not grant him the independent authority to admit Loflin to a hospital for more intensive care. (Id. at 16-17.) Rather, Loflin could only have been admitted to a hospital if he was either sent directly to the emergency room, or scheduled for an appointment with an offsite physician who then could decide to admit him to the hospital. (Id. at 17.) Despite Dr. Pugh's concerns, however, Loflin was not transferred to a hospital and remained in the CCDC infirmary. (Id., Attach. 2 at 2.)

After obtaining Loflin's echocardiogram results, Dr. Pugh met with Defendant John Wilcher, CCDC Jail Administrator, to discuss Loflin's treatment and to request to have Loflin

released on bond. (Id., Attach. 5 at 21.) Dr. Pugh stated that the conversation was focused on the potential cost of Loflin's care and that he "didn't tell [Wilcher] any details of [Loflin's] medical condition." (Id. at 10.) Subsequently, Defendant Wilcher made "inquiries" about getting Loflin released, but his efforts were "unsuccessful." (Id. at 12.) Shortly after the conversation with Dr. Pugh, Defendant Wilcher contacted the jail to inquire about Loflin's status. (Doc. 55, Attach. 1 at 2.) Defendant Wilcher spoke with Nurse Thrift, who "advised [Wilcher] of [Loflin's] status." (Id.)

During this time, Loflin remained in the CCDC infirmary, where he continued to complain of chest pain and difficulty breathing. (Doc. 52, Attach. 4 at C44-C70.) Dr. Pugh stated that these symptoms were consistent with a diagnosis of congestive heart failure. (Id., Attach. 5 at 28.) At the request of Dr. Pugh, Loflin was transported to an appointment with an offsite cardiologist on April 7, 2014. (Id., Attach. 5 at 7.) Immediately after this appointment, the cardiologist admitted Loflin to Memorial Health Hospital. (Id. at 17.) Loflin died at the hospital on April 24, 2014. (Id., Attach. 2 at 3).

After his death, Loflin's mother, Brenda Maley, brought suit individually and on behalf of, the Estate of Matthew Loflin. (Doc. 1.) In an amended complaint, Loflin's father, Gene

Loflin, subsequently joined suit in his individual capacity.[1] (Doc. 92.) In the Amended Complaint, Plaintiffs allege that Defendant Wilcher, along with other named defendants, were deliberately indifferent to Loflin's serious medical need while detained at the CCDC. (Id.) They have filed this action seeking damages under 42 U.S.C. § 1983 for the alleged deliberate indifference to Loflin's medical needs and his subsequent wrongful death. (Id.)

In response, Defendant Wilcher has filed a Motion for Summary Judgment requesting that this Court dismiss all claims against him in his individual capacity.[2] (Doc. 52.) Defendant Wilcher argues that he is entitled to qualified immunity and protected from suit. (Id.) The Plaintiffs contend that Defendant Wilcher is not entitled to qualified immunity, because in their view, Defendant Wilcher violated Matthew Loflin's constitutional

---

[1] Although the Amended Complaint (Doc. 95) was filed after the motions considered in this Order, the claims in the Complaint (Doc. 1) and the Amended Complaint are identical, with the exception of adding Gene Loflin as a plaintiff in the latter. The Court sees no reason to dismiss the pending motions as moot as the merits of the claims are unaffected.

[2] Originally, the motion sought summary judgment on behalf of both Defendants Wilcher and the Estate of Former Sheriff Al St. Lawrence (Doc. 52.) However, the parties later agreed to dismiss all claims against Defendant St. Lawrence. (Doc. 58.) On April, 19, 2017, this Court ordered that the Estate of Former Sheriff Al St. Lawrence should be dismissed from this case with prejudice. (Doc. 60.) Therefore, the Summary Judgment Motion as it pertains to Defendant St. Lawrence is **DISMISSED AS MOOT**.

right when he acted with deliberate indifference to Loflin's medical needs. (Doc. 55.)

In addition to Defendant Wilcher's Motion for Summary Judgment, the parties have also filed a series of stipulated dismissals. Specifically, the parties have filed a Consent Motion to Dismiss Virginia O'Neill, Chatham County, and John Wilcher in his official capacity. (Doc. 87.) Additionally, the parties have filed a Stipulation of Dismissal of Corizon, LLC. (Doc. 65.)

**ANALYSIS**

I. DEFENDANT WILCHER'S MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A

7

mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

B. Qualified Immunity

In his Motion for Summary Judgment, Defendant Wilcher argues that he is protected from suit in his individual capacity by qualified immunity. (Doc. 52.) "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow, 457 U.S. at 819.

In order to raise the defense of qualified immunity, a government official has the initial burden of proving that he was acting within his discretionary authority. Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir. 2015). In this case,

8

the parties agree that Defendant Wilcher was acting within his discretionary authority at all relevant times.[3] Because Defendant Wilcher was acting within his discretionary authority, the burden then shifts to Plaintiffs "to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). To do so, Plaintiffs must prove that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Valderrama, 780 F.3d at 1112.

### 1. Violation of a Constitutional Right

A pre-trial detainee's right to adequate medical care arises under the due process clause of the Fourteenth Amendment. Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015). Plaintiffs allege that Loflin's right to medical care was violated due to Defendant Wilcher's deliberate indifference to Loflin's serious medical need. To show a constitutional violation and prevail on a claim of deliberate indifference to a medical need, a pre-trial detainee must be able to show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that

---

[3] The parties agree that an official is acting within their discretionary authority when making a decision as to what type of medical treatment should be provided based on an inmate's needs. See Keele v. Glynn Cty., 938 F. Supp. 2d 1270, 1309 (S.D. Ga. 2013).

indifference and the plaintiff's injury." Mann v. Taser Int'l Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

### a. Serious medical need

The Plaintiffs have identified enough evidence to establish that Loflin likely suffered from a serious medical condition while at the CCDC. A serious medical need is one that has "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of the doctor's attention." Youmans v. Gagnon, 626 F.3d 557, 558 (11th Cir. 2010). In this case, Defendant Wilcher does not challenge that Loflin suffered from a serious medical need while detained at CCDC. Plaintiffs have provided evidence that Loflin likely suffered from both pneumonia and congestive heart failure while under the care of Dr. Pugh. The Court is satisfied that Plaintiffs have provided at least enough evidence of Loflin's medical condition to survive summary judgment.

### b. Deliberate indifference

To prove a constitutional violation, however, Plaintiffs not only have to prove that Loflin had a serious medical need, but also that Defendant Wilcher was deliberately indifferent to that medical need. In order to prove Defendant Wilcher's deliberate indifference, Plaintiffs must be able to show Defendant Wilcher's "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that

is more than mere negligence." Dang ex rel. Dang v. Sheriff, 856 F.3d 842, 850 (11th Cir. 2017) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

In this case, the parties disagree as to whether Defendant Wilcher had subjective knowledge of Loflin's medical condition. Plaintiffs claim that on at least two occasions Defendant Wilcher was made aware of Loflin's medical condition. (Doc. 55 at 8-9.) First, Plaintiffs cite a meeting between Dr. Pugh and Defendant Wilcher during which Loflin's care was discussed. (Id. at 8.) In his deposition, Dr. Pugh reported that he did not speak with Defendant Wilcher about Loflin's specific condition, but rather only discussed that Loflin's care would be expensive. (Doc. 52, Attach. 5 at 10.) After this discussion, Dr. Pugh reported that Defendant Wilcher requested from his superiors that Loflin be released on bond. (Id. at 12.) The record is undeveloped as to the result of these conversations or how much information was exchanged, but Dr. Pugh reports that Defendant Wilcher's attempts were "unsuccessful." (Id.) Plaintiffs argue that from this discussion and Defendant Wilcher's subsequent attempts to have Loflin released, a jury could infer that he knew that Loflin had a serious medical condition. (Doc. 55 at 8-9.)

Further, Plaintiffs point to Defendant Wilcher phoning the CCDC and inquiring as to Loflin's status. (Id. at 8-9.) The

11

details of this call are not fully developed in the record. However, it appears that Defendant Wilcher called the CCDC and spoke with Nurse Thrift about Loflin's "status." (Id., Attach. 1 at 2.) Plaintiffs argue that a jury could infer from this call that Defendant Wilcher either knew of Loflin's status before the call or must have been informed of Loflin's serious medical condition while speaking with Nurse Thrift. (Id. at 9-10.)

Defendant Wilcher argues that the evidence in the record of these two conversations fails to show that he had any actual knowledge of Loflin's condition or his need to be hospitalized. (Doc. 59 at 3-6.) Defendant Wilcher contends that Dr. Pugh's testimony establishes that Dr. Pugh did not discuss Loflin's medical condition with Defendant Wilcher and that the phone call to Nurse Thrift is insufficient to show that Defendant Wilcher actually knew of Loflin's medical condition. (Id. at 3-6.) Defendant argues that he is entitled to summary judgment because without direct evidence of his subjective knowledge he could not have been deliberately indifferent to Loflin's medical needs.

While Defendant Wilcher may be correct that he never had any knowledge of Loflin's medical condition, Plaintiffs have shown at least enough evidence of Defendant Wilcher's knowledge to create a genuine dispute of material fact. At this stage in the proceedings, the Court must consider these facts in the light most favorable to the nonmoving party. Matsushita, 475

12

U.S. at 587-88. Taking both the conversation with Dr. Pugh and call to Nurse Thrift in the light most favorable to Plaintiffs, a reasonable jury could infer that Defendant Wilcher knew that Loflin had a serious medical condition while at the CCDC. At this stage in the proceedings, Plaintiffs have shown enough evidence, at least in regards to Defendant Wilcher's subjective knowledge of Loflin's medical condition, to survive summary judgment.

While the Court agrees that there is a genuine dispute of fact as to whether Defendant Wilcher knew of Loflin's serious medical need, Plaintiffs have failed to provide enough evidence to show that Defendant Wilcher disregarded that risk by conduct that was more than merely negligent. "An official disregards a serious risk by more than mere negligence when he [or she knows] that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Dang, 856 F.3d at 850 (11th Cir. 2017) (internal quotations omitted). Similarly, an official can be found to be more than merely negligent to an inmate's medical need by an unreasonable delay in providing medical treatment, Valderrama, 780 F.3d. at 1116, or in providing medical care that is "so cursory as to amount to no treatment at all," Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

Plaintiffs base their claim of deliberate indifference on Defendant "Wilcher's failure to take any action whatsoever to address Matthew Loflin's serious medical need." (Doc. 55 at 11.) Plaintiffs allege that Defendant Wilcher's inaction alone is sufficient evidence of his deliberate indifference to Loflin's medical need. (Id.) However, the record directly contradicts this conclusion and contains evidence that Defendant Wilcher did not ignore Loflin's condition. The record shows that after speaking with Dr. Pugh, Defendant Wilcher made "inquires" into having Loflin released. (Doc. 52, Attach. 5 at 12.) Although the extent of Defendant Wilcher's efforts are not fully developed in the record and were unsuccessful, he did not completely disregard Loflin's condition. (Id.) The record cannot support Plaintiffs' assertion that Defendant Wilcher failed to take any action whatsoever. More importantly, Plaintiffs have not made any showing to explain how the actions that Defendant Wilcher did take were grossly negligent. Plaintiffs provide no explanation or facts to support the contention that Defendant Wilcher's attempt to consult with his superiors to get Loflin released was grossly negligent.

Moreover, Plaintiffs have failed to provide any evidence showing that Defendant Wilcher was grossly negligent for actions he failed to take. Plaintiffs have failed to idenitfy any evidence indicating that Defendant Wilcher acted to delay

14

Loflin's treatment, prevented him from having access to an offsite physician, or interfered in his care in any way. Plaintiffs merely point to the fact that Loflin remained in the CCDC infirmary after Dr. Pugh's conversation with Defendant Wilcher. (Doc. 55 at 11.) Yet, Plaintiffs have not shown how Defendant Wilcher's approval to have Loflin released was even necessary or would have allowed Loflin to receive medical care sooner. The record shows that Dr. Pugh had the authority to send Loflin to an emergency room or an offsite physician who would then have the independent authority to admit Loflin to the hospital. (Doc. 52, Attach. 5 at 16-17.) Dr. Pugh eventually did send Loflin to an offsite physician. (Id. at 7.) Plaintiffs have not shown that Defendant Wilcher took any action to prevent or delay that decision.

In addition, Plaintiffs have failed to establish that Defendant Wilcher acted negligently by relying on Dr. Pugh to decide when to transfer Loflin to an appointment with an offsite physician. Non-medical prison officials are entitled to defer to the judgment of medical professionals in determining proper patient care. Williams v. Limestone Cty., 198 Fed. App'x. 893, 897 (11th Cir. 2006); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. .

15

. . . Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on."). Plaintiffs have failed to show that Defendant Wilcher acted unreasonably in relying on Dr. Pugh's treatment of Loflin.

Because Plaintiffs have failed to provide any evidence of Defendant Wilcher's deliberate indifference to Loflin's medical needs, either through his actions or inactions, Plaintiffs cannot show that he violated Loflin's constitutional right to medical treatment.[4] As a result, Defendant Wilcher is entitled to the protections of qualified immunity. Accordingly, Defendant Wilcher's Motion for Summary Judgment is **GRANTED**.

C. Wrongful Death Claim

In addition, to their deliberate indifference claim under 42 U.S.C. § 1983, Plaintiffs also seek recovery against Defendant Wilcher based on Loflin's wrongful death. (Doc. 92 at 23.) It is unclear from the Amended Complaint if Plaintiffs wish to pursue this claim under a state law cause of action or pursuant to their claim under 42 U.S.C. § 1983. (Doc. 92 at 23.) Regardless, both claims must fail. To the extent that Plaintiffs bring the wrongful death claim under 42 U.S.C. § 1983, this

---

[4] Because there is no evidence that Defendant Wilcher violated Loflin's constitutional right, the Court does not need to decide whether the right was clearly established at the time of the alleged violation.

16

claim fails because this claim is barred by qualified immunity as discussed above.

To the extent the claim is brought under a state law negligence theory, the claim also fails. Under Georgia law, a plaintiff must provide evidence to show that an official acting within their discretionary function acted with "actual malice or with actual intent to cause injury." Gilbert v. Richardson, 264 Ga. 744, 753, 452 S.E.2d 476, 483 (1994) (quoting Ga. Const. art. 1, § II, para. IX(d)). In this case, Plaintiffs have failed to identify any evidence that Defendant Wilcher acted with the requisite level of malice. Accordingly, both parties have agreed that a wrongful death suit premised on state law should be denied. (Doc. 52 at 14; Doc. 55 at 15.) Because the state law claim and claim under 42 U.S.C. § 1983 both fail, Defendant Wilcher's Motion for Summary Judgment as to the wrongful death claim is **GRANTED**.

II. CONSENT MOTION TO DISMISS

Additionally, the parties have filed a Consent Motion to Dismiss Defendants Virginia O'Neill, Chatham County, and John Wilcher in his Official Capacity With Prejudice. (Doc. 87.) Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), an action may be dismissed pursuant to "a stipulation of dismissal signed by all parties who have appeared." Moreover, parties are permitted to dismiss an action against some defendants without

dismissing the entire action. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004). Accordingly, the parties' motion is **GRANTED**.[5] As requested by the parties, Defendants Virginia O'Neill, Chatham County and John Wilcher in his official capacity are **DISMISSED WITH PREJUDICE** from this action.[6]

III. STIPULATION OF DISMISSAL

In addition, the parties have filed a Joint Stipulation of Dismissal of Corizon, LLC. (Doc. 65.) As discussed above, Federal Rule of Civil Procedure 41(a)(1)(A)(ii) allows an action to be dismissed pursuant to "a stipulation of dismissal signed by all parties who have appeared." Because the parties have all

---

[5] As a result, Defendant O'Neill's Motion for Summary Judgment (Doc. 68) and Defendants Chatham County and John Wilcher's Motion for Summary Judgment (Doc. 61) are **DISMISSED AS MOOT.**

[6] Certain courts disagree on whether to allow a plaintiff to dismiss claims against a defendant in their official capacity while retaining claims against the same defendant in their individual capacity. Compare Smith v. City of Mobile, No. 16-00478-N, 2017 WL 391152, at *2 (S.D. Ala. Jan. 27, 2017)(holding that a plaintiff could not voluntarily dismiss only claims against a defendant in their official capacity) with Bynum v. Cty. of Kauai, No. 12-00523 JMS/RLP, 2014 WL 771116, at *1 (D. Haw. Feb. 24, 2014)(allowing a plaintiff to voluntarily dismiss claims against a county official in their individual capacity while still litigating claims against the same individual in their official capacity). In this case, Plaintiffs only seek to voluntarily dismiss claims against Defendant Wilcher in his official capacity. However, because this Court has dismissed all claims against Defendant Wilcher in his individual capacity, this Court does not have to address whether it is proper to dismiss only those claims against Defendant Wilcher in his official capacity. Rather, the only remaining claims against Defendant Wilcher are those in his official capacity. Therefore, the stipulation would effectively dismiss all remaining claims against Defendant Wilcher.

agreed to the stipulation, Corizon, LLC is **DISMISSED WITH PREJUDICE** from this action.

## CONCLUSION

For the foregoing reasons, this Court finds that Defendants Al St. Lawrence and Wilcher's Motion for Summary Judgment is **GRANTED IN PART** and **DISMISSED AS MOOT IN PART**. (Doc. 52.) The parties' Consent Motion to Dismiss Defendants Virginia O'Neill, Chatham County, and John Wilcher in his Official Capacity With Prejudice is **GRANTED**. (Doc. 87.) As a result, Defendant O'Neill's Motion for Summary Judgment (Doc. 68) and Defendants Chatham County and John Wilcher's Motion for Summary Judgment (Doc. 61) are **DISMISSED AS MOOT**. Further, the parties' Joint Stipulation of Dismissal of Corizon, LLC from this action is **GRANTED**. (Doc. 65.) The Clerk of Court is **DIRECTED** to amend the caption accordingly.

SO ORDERED this 27th day of September 2017.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA