BELINDA LEE MALEY, individually )
and on behalf of the Estate of )
Matthew Clinton Loflin, )
deceased; and GENE LOFLIN, )
individually; )
                                )
        Plaintiffs, )
                                )
v.                              )        CASE NO. CV416-060
                                )
CORIZON HEALTH, INC., a )
Delaware Corporation; CORIZON, )
LLC, a Missouri Limited )
Liability Company; CHATHAM )
COUNTY, a Georgia County; ROY )
HARRIS; ESTATE OF AL ST. )
LAWRENCE; JOHN WILCHER, )
individually and in his )
official capacity as Jail )
Administrator; SCOTT KENNEDY, )
M.D.; ADAMAR GONZALEZ, M.D.; )
and VIRGINIA O'NEILL; )
                                )
        Defendants. )
                                )

**U. S. DISTRICT COURT**
**Southern District of Ga.**
**Filed in Office**

_____ M
2 21 20 18
_____
**Deputy Clerk**

## O R D E R

Before the Court are Defendant Scott Kennedy's Motion for
Summary Judgment (Doc. 66) and Defendant Corizon Health, Inc.'s
Motion for Summary Judgment (Doc. 67). For the following
reasons, Defendant Kennedy's motion is **GRANTED IN PART** and
**DENIED IN PART**. Defendant Kennedy's motion is **GRANTED** with
respect to any claim for wrongful death premised on state law.
However, Defendant Kennedy's motion is **DENIED** with respect to
Plaintiffs' deliberate indifference and corresponding wrongful

death claims. Defendant Corizon's motion is also **GRANTED IN PART** and **DENIED IN PART**. Defendant Corizon is entitled to summary judgment on Plaintiffs' claim for wrongful death pursuant to state law. However, summary judgment is **DENIED** with respect to Plaintiffs' deliberate indifference and corresponding wrongful death claims against Defendant Corizon.

## BACKGROUND

This case arises out of the incarceration and subsequent death of Matthew Loflin in 2014. (Doc. 1.)[1] On February 6, 2014, Loflin was arrested on drug charges. (Doc. 92 at 8.) He was held as a pre-trial detainee at the Chatham County Detention Center ("CCDC"). (Id.)

At the time of Loflin's detention, Defendant Corizon Health Inc. ("Corizon") provided medical services to detainees at the CCDC pursuant to a contract with Chatham County. (Id.) Dr. Charles Pugh was the acting onsite medical director employed by Defendant Corizon. (Doc. 93, Ex. 2 at 72.) As the onsite medical director, Dr. Pugh provided direct patient care and monitored healthcare expenses to ensure healthcare was provided in a cost-efficient manner. (Id. at 23, 79.) Defendant Dr. Scott Kennedy was the acting regional medical director for Defendant Corizon. (Doc. 93, Ex. 1 at 7.) In his role, Defendant Kennedy "served as

---

[1] These facts are assessed in the light most favorable to Plaintiffs as the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

coach, mentor, instructor, and supervisor to the site medical directors within his region of all facilities in Georgia and Florida." (Doc. 79, Attach. 2 at 2.)

After his arrest and arrival at the CCDC, Loflin's health quickly began to deteriorate. (Doc. 66-3, Attach. 3 at c34-37.) Initially, Dr. Pugh believed that Loflin suffered from pneumonia. (Doc. 93, Ex. 2 at 108.) Between February 7, 2014 and March 23, 2014, Loflin had at least 16 encounters with Defendant Corizon's medical staff. (Doc. 66-3, Attach. 3.) On March 24, 2014, Dr. Pugh became concerned about Loflin's condition and decided to admit him to the CCDC medical infirmary. (Doc. 93, Ex. 2 at 67.) In the infirmary, Dr. Pugh reported that Loflin was provided with the best possible care that could be provided at a jail. (Id. at 121.) However, Dr. Pugh acknowledged that the CCDC infirmary was not equipped to handle serious medical conditions. (Id. at 68.)

On March 26, 2014, Dr. Pugh ordered an echocardiogram to test Loflin's heart. (Id. at 62-3.) The echocardiogram revealed that Loflin had a "very poor heart function" that indicated a "fairly severe cardiomyopathy." (Id. at 64.) After obtaining these results, Dr. Pugh believed that Loflin needed more intensive care than could be provided in the CCDC infirmary. (Id. at 121.) Dr. Pugh's position at the CCDC, however, did not grant him the independent authority to admit Loflin to a

3

hospital for more intensive care. (Id. at 62.) Rather, Loflin could only have been admitted to a hospital if he was either sent directly to the emergency room, or scheduled for an appointment with an offsite physician who then could decide to admit him to the hospital. (Id.)

On March 26, 2014 and March 28, 2014, Dr. Pugh spoke with Defendant Kennedy to discuss Loflin's care. (Id. at 66-7, 85.) During these calls, Dr. Pugh stated that he believed Loflin should be taken to the emergency room so that he would be able to quickly see a cardiologist. (Id. at 85, 114.) Defendant Kennedy, however, disagreed. (Doc. 93, Ex. 1 at 92-3.) Defendant Kennedy did not think that Loflin would actually be able to see a cardiologist if admitted to the emergency room. (Id. at 92-3.) Instead of sending Loflin directly to the emergency room, Defendant Kennedy and Dr. Pugh decided to schedule Loflin an appointment directly with an offsite cardiologist. (Id. at 110.) An appointment was scheduled for April 7, 2014. (Doc. 93, Ex. 2 at 25.)

In the meantime, Loflin remained in the CCDC infirmary, where he continued to complain of chest pain and difficulty breathing. (Doc. 66-3, Attach. 3 at c67-70.) At some point, Dr. Pugh spoke with Defendant John Wilcher, CCDC Jail Administrator,

to request that Loflin be released from incarceration on bond.[2] (Doc. 93, Ex. 2 at 33.) Dr. Pugh testified that it was Defendant Corizon's standard practice to request the release of a prisoner who would likely require expensive care. (Id. at 38.) Once released, Defendant Corizon would have no obligation to pay for the prisoner's medical bills. (Id.) In this case, Dr. Pugh's request to have Loflin released from incarceration was ultimately unsuccessful. (Id. at 34.)

On April 7, 2014, Loflin attended his scheduled appointment with an offsite cardiologist, Dr. Brett Burgess. (Id. at 25.) Immediately after this appointment, Dr. Burgess admitted Loflin to Memorial Health Hospital. (Id. at 26.) On April 24, 2014, Loflin died at the hospital. (Doc. 92 at 16.)

After his death, Loflin's mother, Plaintiff Brenda Maley, brought suit individually and on behalf of the Estate of Matthew Loflin. (Doc. 1.) In an amended complaint, Loflin's father, Plaintiff Gene Loflin, subsequently joined suit in his individual capacity.[3] (Doc. 92.) In the amended complaint,

---

[2] John Wilcher was originally named as a defendant in this action. On September 28, 2017, however, this Court granted Defendant Wilcher's motion for summary judgment and all claims against Defendant Wilcher were dismissed. (Doc. 97.)

[3] Although the amended complaint (Doc. 95) was filed after the motions considered in this order, the claims in the original complaint (Doc. 1) and the amended complaint are identical, with the exception of adding Gene Loflin as a plaintiff in the latter. The Court sees no reason to dismiss Defendant Kennedy's

Plaintiffs allege that Defendants Kennedy and Corizon were deliberately indifferent to Loflin's critical medical needs while detained at the CCDC. (Id.) As a result, Plaintiffs have filed this action seeking damages under 42 U.S.C. § 1983 for the alleged deliberate indifference to Loflin's medical needs and his subsequent wrongful death. (Id.)

In support of their claim, Plaintiffs have consulted with a cardiologist, Dr. Charles Wickliffe. (Doc 69-2, Ex. 1 at 6-7.) Dr. Wickliffe opined that Loflin "died of the complication of his congestive heart failure and underlying cardiomyopathy." (Id.) He acknowledged that while Loflin's condition likely had a poor prognosis from the beginning, "[h]is death was related to the marked delay in initiation of appropriate treatment for his congestive heart failure." (Id.) He further concluded that the care provided at the CCDC was insufficient to properly treat Loflin's condition. (Id.)

Defendants Kennedy and Corizon have now each filed similar motions for summary judgment. (Doc. 66; Doc. 67.) In their motions, Defendants Kennedy and Corizon argue that Plaintiffs are unable to establish any facts to support their contention that either Defendants Kennedy or Corizon were deliberately indifferent to Loflin's medical needs. As a result, both

---

or Defendant Corizon's motions as moot as the merits of these motion are unaffected.

Defendants argue that Plaintiffs' wrongful death claim also must fail.

## ANALYSIS

I.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district court
> of the basis for its motion, and identifying those
> portions of the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. CLAIMS AGAINST DEFENDANT KENNEDY

In their amended complaint, Plaintiffs allege that Defendant Kennedy was deliberately indifferent to Loflin's serious medical condition when he delayed Loflin's access to appropriate medical care. In addition to any recovery under 42 U.S.C. § 1983 for Defendant Kennedy's alleged deliberate indifference, Plaintiffs also seek damages based on a wrongful death claim. In his motion for summary judgment, Defendant Kennedy first contends that he is entitled to summary judgment on Plaintiffs' deliberate indifference claim. In his motion, he argues that Plaintiffs are unable to identify any evidence that he was deliberately indifferent to Loflin's serious medical need or in the alternative, that his actions caused any harm to Loflin. Because Defendant Kennedy asserts that he is entitled to summary judgment on Plaintiffs' deliberate indifference claim, he argues that their wrongful death claim brought pursuant to the deliberate indifference claim must also be dismissed. The Court will first consider Defendant Kennedy's argument that he is entitled to summary judgment on Plaintiffs' deliberate indifference claim.

A. Deliberate Indifference

A pre-trial detainee's right to adequate medical care arises under the due process clause of the Fourteenth Amendment. Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015).

9

Plaintiffs allege that Loflin's right to medical care was violated due to Defendant Kennedy's deliberate indifference to Loflin's serious medical need. To show a constitutional violation and prevail on a claim of deliberate indifference to a medical need, a pre-trial detainee must be able to show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

### a. Serious medical need

As a starting point, Plaintiffs have identified enough evidence to establish that Loflin likely suffered from a serious medical condition while at the CCDC. A serious medical need is one that has "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of the doctor's attention." Youmans v. Gagnon, 626 F.3d 557, 558 (11th Cir. 2010). In this case, Defendant Kennedy "concedes that Mr. Loflin's heart condition constituted a serious medical need." (Doc. 66 at 8-9.) As such, the Court is satisfied that Plaintiffs have provided enough evidence of Loflin's medical condition to survive summary judgment.

## b. Deliberate indifference

To prove a constitutional violation, however, Plaintiffs not only have to prove that Loflin had a serious medical need, but also that Defendant Kennedy was deliberately indifferent to that medical need. In order to prove Defendant Kennedy's deliberate indifference, Plaintiffs must be able to show Defendant Kennedy's "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." Dang ex rel. Dang v. Sheriff, 856 F.3d 842, 850 (11th Cir. 2017) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). The Court will consider each of these factors to determine whether Plaintiffs have identified enough evidence to create a genuine dispute of material fact as to whether Defendant Kennedy was deliberately indifferent to Loflin's serious medical need.

First, the Court must consider whether Plaintiffs have identified any evidence from which a reasonable jury could find that Defendant Kennedy had subjective knowledge of the risk posed by Loflin's medical condition. In his motion, Defendant Kennedy alleges that there is no evidence that he knew Loflin needed more care than he was already receiving at the CCDC. In support of his argument, Defendant Kennedy cites Dr. Pugh's own testimony that he did not believe Loflin was receiving inadequate care while being treated at the CCDC infirmary prior

11

to his hospitalization on April 7, 2014. (Doc. 93, Ex. 2 at 121.) Defendant Kennedy notes that he never personally evaluated Loflin and alleges that he relied on Dr. Pugh's assessment to determine what care was necessary. Because Dr. Pugh reported that Loflin was receiving adequate care, Defendant Kennedy contends that he had no knowledge that Loflin needed a higher level of care or was at risk of serious harm.

After careful review, this Court finds Defendant Kennedy's argument unconvincing. As a starting point, Plaintiffs have offered evidence that Defendant Kennedy knew Loflin suffered from a serious medical condition despite the fact that Defendant Kennedy had never personally evaluated Loflin. Specifically, Plaintiffs have identified two conversations between Dr. Pugh and Defendant Kennedy where they discussed the results of Loflin's echocardiogram and his treatment. (Id. at 113.)

More importantly, however, Plaintiffs have also provided evidence that Defendant Kennedy had reason to know that Loflin was not receiving adequate care for his serious medical condition at the CCDC. Plaintiffs have identified evidence that Dr. Pugh specifically contacted Defendant Kennedy because he believed that Loflin should be sent to the emergency room in order to receive more care than could be provided at the CCDC. (Id. at 85, 114.) In this Court's view, this fact alone is enough for a reasonable jury to conclude that Defendant Kennedy

had knowledge that Loflin's condition posed a serious risk to his health and that he needed a higher level of care than could be provided at the CCDC.

After concluding that there is evidence Defendant Kennedy had knowledge of the serious risk to Loflin's health, the Court must consider whether Plaintiffs have offered evidence that Defendant Kennedy disregarded that risk. In his motion, Defendant Kennedy contends that there is no evidence in the record to establish that he disregarded any risk to Loflin's health. He alleges that Loflin was provided with the same level of care in the CCDC that he would have received if he had been admitted into a hospital. Moreover, Defendant Kennedy contends that there is no evidence that he blocked Dr. Pugh from sending Loflin to the emergency room. Instead, Defendant Kennedy asserts that the evidence shows he recommended a better course of action to ensure that Loflin was able to see a cardiologist. He contends that, at best, Plaintiffs' claim is a challenge to the adequacy of treatment Loflin received and, therefore, is insufficient to show that he disregarded the serious risk posed by Loflin's condition.

First, the Court rejects Defendant Kennedy's contention that this case should be more appropriately viewed as a complaint about the adequacy of Loflin's treatment. While Loflin did in fact receive some treatment at the CCDC, Plaintiffs'

claim centers on the ten-day delay from the point in which Dr. Pugh believed that Loflin needed more care than could be provided in the CCDC and the date that Loflin was actually admitted to the hospital. As such, Plaintiffs' claim is not merely that Loflin received inadequate medical treatment or that Defendants made an improper medical decision about his treatment. Rather, Plaintiffs have alleged that there was a purposeful delay in his care that amounted to deliberate indifference to the known risk of his heart condition.

While the Court rejects Defendant Kennedy's contention that Plaintiffs' claim is merely one based on medical malpractice, this Court must still determine whether Plaintiffs have identified any evidence that Defendant Kennedy disregarded the risk to Loflin's health. "A plaintiff may establish a prison official's deliberate indifference by showing that the official failed or refused to provide care for a serious medical condition, delayed care 'even for a period of hours,' chose 'an easier but less efficacious course of treatment,' or provided care that was 'grossly inadequate' or 'so cursory as to amount to no treatment at all.' " Clark v. Bandy, No. 2:10-CV-00169, 2011 WL 1346975, at *3 (N.D. Ga. Apr. 8, 2011) (quoting McElligott v. Foley, 182 F.3d 1282, 1255 (11th Cir. 1999)). In this Court's view, a reasonable jury could find that Defendant Kennedy disregarded the known risk to Loflin's health.

Plaintiffs have identified evidence that Dr. Pugh called Defendant Kennedy and immediately wanted to send Loflin to the emergency room so that he could see a cardiologist. (Doc. 93, Ex. 2 at 119.) After Dr. Pugh's conversation with Defendant Kennedy, the visit to a cardiologist was delayed for ten days despite the known severity of Loflin's condition. (Doc. 93, Ex. 1 at 110.) Based on this delay, the Court finds that Plaintiffs have identified enough evidence that Defendant Kennedy disregarded the threat to Loflin's health to survive summary judgment.

Plaintiffs, however, must also be able to show a genuine dispute of material fact that Defendant Kennedy's disregard of the known risk was more than merely negligent. In his motion, Defendant Kennedy purports that there was no evidence that his actions were either grossly incompetent or inadequate. In his view, his recommendation to not send Loflin to the emergency room was actually the best decision that could have been made for Loflin's treatment. After a careful review of the record, the Court cannot agree.

In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit Court of Appeals provided that "[a] defendant . . . who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." In this case, Plaintiffs have

15

identified evidence that the decision not to immediately send Loflin to the emergency room was influenced by non-medical concerns. First, Dr. Pugh testified that he was constantly under pressure to make certain medical decisions in order to avoid costs. (Doc. 93, Ex. 2 at 79.) Specifically, he noted that there was pressure from Defendant Kennedy to avoid sending prisoners to the hospital in order to avoid costly medical expenses. (Id. at 84.) Additionally, Plaintiffs identified evidence that the delay in Loflin's care was created in order to attempt to get Loflin released from incarceration before his appointment with the cardiologist. (Id. at 40, 81.) Dr. Pugh testified that when prisoners were expected to have costly medical treatments, it was standard practice to request that those prisoners were released from incarceration. (Id. at 38.) If Loflin was released from incarceration, then his private insurance would be responsible for all of his medical costs. (Id. at 40.) In accordance with the standard practice, Dr. Pugh testified that he spoke with Defendant Wilcher to request that Loflin was released from jail. (Id. at 38.) Based on this evidence, a reasonable jury could conclude that Loflin's access to medical care was delayed in order to save money.

In his motion, Defendant Kennedy contests Dr. Pugh's testimony and argues that there was no financial reason behind the decision to delay Loflin's treatment. Instead, he argues

that the decision to make an appointment with the cardiologist was the best course of action. On a motion for summary judgment, however, Defendant Kennedy's arguments are immaterial. At this stage, this Court is simply determining whether there is a genuine dispute of material fact that Defendant Kennedy was more than merely negligent when he disregarded the risk to Loflin's health. Because Plaintiffs have identified evidence that the decision to delay Loflin's care was based on non-medical concerns, this Court finds that Plaintiffs have met their burden. Plaintiffs have shown that there is a genuine dispute of material fact as to whether Defendant Kennedy intentionally delayed Loflin's care to save money.

Overall, Plaintiffs have been able to show some evidence that Defendant Kennedy knew of the serious risk to Loflin's health and that he disregarded that risk through actions that were more than merely negligent. As a result, Plaintiffs have sufficiently identified evidence to establish a genuine dispute of material fact that Defendant Kennedy was deliberately indifferent to Loflin's medical needs. However, this determination does not end this Court's inquiry.

### c. Causation

In order to survive summary judgment, Plaintiffs must also be able to show a causal connection between Defendant Kennedy's alleged deliberate indifference and the harm to Loflin's health.

In this case, Defendant Kennedy argues that even if the Court were to find evidence that he was deliberately indifferent to Loflin's serious medical condition, Plaintiffs' claims must fail because there is no evidence that any of his actions caused Loflin's harm. In support of his argument, Defendant Kennedy presents two different reasons as to why Plaintiffs have failed to establish causation. First, he contends that he was not directly in charge of Loflin's care and did not impede Dr. Pugh's ability to send Loflin to the emergency room. He purports that Dr. Pugh was permitted to send Loflin to the emergency room without his approval. As a result, he contends there is no causal connection between his recommendation and the alleged lack of treatment for Loflin. Additionally, Defendant Kennedy alleges that there is no dispute that Loflin was receiving the same level of care at the CCDC that he would have received at the hospital. Therefore, even if Loflin should have been sent to the hospital, the failure to do so did not contribute to his death.

The Court, however, does not agree. First, Plaintiffs have identified testimony that Loflin was not receiving adequate care at the CCDC. Dr. Pugh testified that Loflin would have received better care at the hospital because the hospital is more equipped than the jail to quickly obtain results from lab testing and screenings. (Doc. 93, Ex. 2 at 68-9.) In addition,

18

Dr. Wickliffe's expert opinion directly contradicts Defendant Kennedy's contention that Loflin was receiving adequate care at the CCDC. (Doc 69-2. Ex. 1 at 6-7.) Moreover, Dr. Wickliffe opined that Loflin's chances of recovery decreased with each day he was not receiving appropriate care. (Id.) Based on Dr. Pugh's and Dr. Wickliffe's testimony, a reasonable jury could conclude that the delay in sending Loflin to the hospital directly contributed to Loflin's death.

Second, Plaintiffs have provided evidence connecting Defendant Kennedy to the delay that may have exacerbated Loflin's condition. Dr. Pugh contacted Dr. Kennedy requesting that Loflin be sent to the emergency room. (Doc. 93, Ex. 2 at 65.) Ultimately, Defendant Kennedy did not want to send Loflin to the emergency room and the decision was made that an offsite appointment should be scheduled for ten days later. (Id. at 121.) While Dr. Pugh was involved in the decision to delay Loflin's care, there is no requirement that Defendant Kennedy was the sole reason that Loflin's treatment was delayed. From this evidence, a reasonable jury could conclude that Defendant Kennedy caused Dr. Pugh not to send Loflin to the emergency room as initially requested by Dr. Pugh. As such, the Court finds that Defendant Kennedy is not entitled to summary judgment because Plaintiffs have established enough evidence of a causal link between Defendant Kennedy's action and Loflin's death.

### d. Conclusion

Plaintiffs have provided evidence that Loflin suffered from a serious health condition while incarcerated at the CCDC. Moreover, Plaintiffs have identified evidence that Defendant Kennedy knew about the severity of Loflin's condition and disregarded the risk to his health by actions that were more than merely negligent. Because Plaintiffs have shown a genuine dispute of material fact as to whether Defendant Kennedy was deliberately indifferent to Loflin's health, Defendant Kennedy's motion for summary judgment with respect to Plaintiffs' claim that he was deliberately indifferent to Loflin's serious medical need is denied.

### B. Wrongful Death Claim

In addition to their deliberate indifference claim under 42 U.S.C. § 1983, Plaintiffs also seek recovery against Defendant Kennedy based on Loflin's wrongful death. (Doc. 92 at 23.) From the amended complaint, it is unclear if Plaintiffs wish to pursue a wrongful death claim as a state law cause of action or pursuant to their claim under 42 U.S.C. § 1983. To the extent that Plaintiffs wish to bring this claim pursuant to their deliberate indifference claim under 42 U.S.C. § 1983, this claim survives. This Court has denied Defendant Kennedy's request for summary judgment on Plaintiffs' deliberate indifference claims and, therefore, cannot dismiss any corresponding wrongful death

claim. However, to the extent that the wrongful death claim is brought pursuant to state law, this claim fails. Plaintiffs concede in their briefing that "summary judgment should be entered in favor of [Defendant] Kennedy on the state law wrongful death claim only." (Doc. 79 at 16.) As a result, Defendant Kennedy's motion is granted with respect to any wrongful death claim based on state law.

III. CLAIMS AGAINST DEFENDANT CORIZON

In their amended complaint, Plaintiffs also brought suit against Defendant Corizon alleging that it was deliberately indifference to Loflin's serious medical condition by its practice of delaying medical care in order to save money. Against Defendant Corizon, Plaintiffs seek damages based on Defendant Corizon's deliberate indifference and for Loflin's wrongful death. Similarly to Defendant Kennedy, Defendant Corizon has also filed a motion for summary judgment seeking dismissal of Plaintiffs' claims. In its motion, Defendant Corizon makes similar arguments to those raised by Defendant Kennedy. First, Defendant Corizon contends that Plaintiffs' claim for deliberate indifference fails because Plaintiffs have failed to show that Loflin's constitutional rights were violated or that Defendant Corizon had a policy or custom that caused Loflin's constitutional rights to be violated. In addition, Defendant Corizon contends that because Plaintiffs' claim for

deliberate indifference fails, Plaintiffs' wrongful death claim must also be dismissed. For many of the same reasons discussed above, this Court can only partially agree.

## A. Deliberate Indifference

In its Motion for Summary Judgment, Defendant Corizon first contends that it is entitled to summary judgment on Plaintiffs' claim that it was deliberately indifferent to Loflin's medical needs. Although Defendant Corizon is a private entity, Plaintiffs' suit for deliberate indifference under 42 U.S.C. § 1983 is functionally treated as a suit brought against a municipality. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (holding that when a private entity contracts with a county to provide medical services, "it becomes the functional equivalent of the municipality"). As such, Plaintiffs cannot maintain a suit against Defendant Corizon based on the doctrine of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1878). Rather, for Plaintiffs to maintain a claim for deliberate indifference against Defendant Corizon, Plaintiffs must be able to show "(1) that [Loflin's] constitutional rights were violated; (2) that [Defendant Corizon] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Bankshot Billiards, Inc. v. City of Ocala, 634

F.3d 1340, 1349 (11th Cir. 2011) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)).

### a. Constitutional violation

Defendant Corizon first argues that summary judgment is appropriate because Plaintiffs have failed to establish an underlying constitutional violation subjecting it to liability under 42 U.S.C. § 1983. Defendant Corizon contends that based on a favorable ruling on Defendant Kennedy's motion for summary judgment, Plaintiffs are unable to show an underlying constitutional violation. Because Defendant Kennedy is entitled to summary judgment, Defendant Corizon maintains that it is also entitled to summary judgment.

However, this argument fails. As discussed above, Defendant Kennedy is not entitled to summary judgment. Plaintiffs have identified enough evidence that Defendant Kennedy was in fact deliberately indifferent to Loflin's serious medical condition. As a result, Plaintiffs can establish a constitutional violation based on Defendant Kennedy's deliberate indifference. Further, Defendant Corizon has offered no additional reason as to why Plaintiffs have failed to prove a constitutional violation. As a result, Defendant Corizon has failed to establish its entitlement to summary judgment.

b. Policy or custom

Next, the Court must determine whether there is sufficient
evidence to create a genuine dispute of material fact that
Defendant Corizon had a policy or custom that was deliberately
indifferent to Loflin's medical condition. In determining
whether Defendant Corizon had a policy or custom, there is no
requirement that the custom or policy at issue is written or an
officially promulgated policy. Grech v. Clayton Cty., 335 F.3d
1326, 1329-30 (11th Cir. 2003). Rather, Plaintiffs can meet
their burden by establishing proof of an unofficial custom or
practice. Id. To do so, Plaintiffs must typically prove a
pattern of similar constitutional violations. Craig v. Floyd
Cty., 643 F.3d 1306, 1310 (11th Cir. 2011).

In this case, Defendant Corizon contends that there "is no
evidence whatsoever that Corizon had a policy, practice, or
custom of deliberate indifference." (Doc. 67 at 12.) Instead,
Defendant Corizon argues that the record supports that there is
no policy or custom, because there is evidence that other
prisoners were sent to the emergency room. In fact, Defendant
Corizon asserts that Plaintiffs have offered no evidence of a
prior similar incident where an inmate was denied access to the
emergency room. More importantly, Defendant Corizon maintains
that, in this case, Loflin was provided with the best care that
he could have received while incarcerated and there is no

24

evidence that Defendant Corizon did anything to prevent Loflin from being sent to the emergency room or receiving adequate treatment. In Defendant Corizon's view, it provided Loflin with appropriate medical care and, therefore, cannot now be accused of having a policy or custom of denying access to medical treatment.

After careful consideration, the Court cannot agree. In the Court's view, Plaintiffs have identified enough evidence that Corizon had a policy or custom that led to the alleged constitutional violation in this case. Plaintiffs have offered evidence, mainly through the testimony of Dr. Pugh, that Defendant Corizon fostered a culture of making certain medical decisions based primarily on the financial implications of the decision. (Doc. 93, Ex. 2 at 38.) In Dr. Pugh's testimony, he purports that there was constant pressure not to send inmates to the emergency room if that option could be avoided. (Id. at 84-5.) Moreover, Dr. Pugh testified that there was often an expectation that he should request the release of inmates requiring potentially expensive medical treatment. (Id. at 38.) Dr. Pugh testified that this custom was designed in order to avoid paying for the inmate's medical expenses. (Id.) Given Dr. Pugh's testimony, the Court finds that a reasonable jury could find that Defendant Corizon had a custom or policy of delaying medical care to inmates with serious medical conditions.

## c. Causation

Finally, Defendant Corizon contends that Plaintiffs' claim against it fails because even if there was a constitutional violation and evidence of a custom or policy, Plaintiffs have failed to show a causal connection between the custom or policy and the resulting constitutional violation. Similar to the arguments presented by Defendant Kennedy, Defendant Corizon presents two arguments as to why there is no casual connection in this case. First, Defendant Corizon argues that Loflin's condition existed before he was incarcerated and the nature of his condition had a poor prognosis from the start. Further, Defendant Corizon contends that Loflin was receiving the best care that he possibly could have received while in jail. Defendants cite testimony provided by Dr. Burgess where he discusses that Loflin was receiving the same medication by the same route that he would have received under Dr. Burgess's care. (Doc. 93, Ex. 3 at 93-94.) Because Loflin was provided with the same medication he would have otherwise received outside of the jail, Defendant Corizon argues that there is no causal connection between the alleged policy of delaying treatment and his death.

Defendant's argument, however, completely ignores Plaintiffs' evidence that Loflin was not provided with the best care and that the inadequate care he received in the jail was a

contributing factor in his death. First, Dr. Pugh expressly testified that while he thought Loflin was receiving the best care possible within the constraints of a jail infirmary, Loflin could have received better care at a hospital. (Doc. 93, Ex. 2 at 121.) Specifically, Dr. Pugh testified that he believed Loflin could receive more accurate information about his condition because the hospital would be able to more quickly conduct testing. (Id. at 68-9.)

In addition, Dr. Wickliffe directly contradicts Defendant's argument. Dr. Wickliffe testified that Loflin's condition existed prior to his incarceration, but was most likely exacerbated by the delay in care that he received. (Doc 69-2, Ex. 1 at 6-7.) Dr. Wickliffe opined that while Loflin initially had a poor prognosis, his chances of survival decreased with each day that he was not receiving a higher level of care. (Id.) Because both Dr. Pugh and Dr. Wickliffe contradict Defendant Corizon's argument that there is no link between the alleged policy or custom and Loflin's death, Plaintiffs have sufficiently met their burden to survive summary judgment.

### d. Conclusion

Ultimately, this Court finds that a reasonable jury could find that Defendant Corizon implemented a policy or custom to delay health care treatment for certain prisoners with serious medical needs. Plaintiffs have sufficiently identified evidence

that a policy or custom existed, and that it led to the alleged constitutional violation in this case. As a result, Defendant Corizon's request for summary judgment with respect to Plaintiffs' claim for deliberate indifference is denied.

### B. Wrongful Death

In addition to their deliberate indifference claim under 42 U.S.C. § 1983, Plaintiffs also seek recovery against Defendant Corizon based on Loflin's wrongful death. (Doc. 92 at 23.) It is unclear from the amended complaint if Plaintiffs wish to pursue this claim as a state law cause of action or pursuant to their claim under 42 U.S.C. § 1983. To the extent that Plaintiffs wish to bring this claim pursuant to their deliberate indifference claim under 42 U.S.C. § 1983, then this claim survives. The Court has refused to grant Defendant Corizon summary judgment on Plaintiffs' deliberate indifference claims and, therefore, cannot dismiss the corresponding wrongful death claim. However, to the extent that the wrongful death claim is brought pursuant to state law, this claim fails. Plaintiffs concede in their briefing that summary judgment is appropriate on the state law wrongful death claim. As a result, Defendant Corizon's motion is granted with respect to any wrongful death claim based on state law.

## CONCLUSION

For the foregoing reasons, Defendant Kennedy's motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant Kennedy's motion is **GRANTED** with respect to any claim for wrongful death premised on state law. However, Defendant Kennedy's motion is **DENIED** with respect to Plaintiffs' deliberate indifference and corresponding wrongful death claims. Defendant Corizon's motion is also **GRANTED IN PART** and **DENIED IN PART**. Defendant Corizon's motion is **GRANTED** with respect to Plaintiffs' claim for wrongful death pursuant to state law. However, Defendant Corizon's motion is **DENIED** with respect to Plaintiffs' deliberate indifference and corresponding wrongful death claims.

SO ORDERED this 21ˢᵗ day of February 2018.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA