FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2019 MAR 26 AM 10: 19

CLERK
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION**

BELINDA LEE MALEY, individually )
and on behalf of the Estate of )
Matthew Clinton Loflin, )
deceased; and GENE LOFLIN, )
individually; )
 )
    Plaintiffs, )
 )
v. )    CASE NO. CV416-060
 )
CORIZON HEALTH, INC., a )
Delaware corporation; and SCOTT )
H. KENNEDY, M.D.; )
 )
    Defendants. )
————————————————————— )

## O R D E R

Before the Court is Defendants' Motion in Limine. (Doc. 119.) In their motion, Defendants request that this Court trifurcate the upcoming trial in this case, exclude some of Plaintiffs' potential evidence and implement a variety of other miscellaneous rules at trial. Plaintiffs have provided a detailed response to Defendants' motion. (Doc. 120.) Without the context of trial and the exact testimony or evidence at issue, the Court is unable to fully consider many of Defendants' requests. To the extent that the Court is able to rule on Defendants' requests or offer guidance to the parties, the Court has provided a detailed discussion below. For the following

reasons, Defendants' motion is **GRANTED IN PART, DENIED IN PART** and **DEFERRED IN PART**.

1. <u>Trifurcation</u>

In their motion, Defendants first request that this Court trifurcate the trial in this case to allow for the jury to separately consider (1) whether Defendant Kennedy was deliberately indifferent to Matthew Loflin's serious medical condition; (2) whether Defendant Corizon maintained a policy or custom that constituted deliberate indifference to Loflin's medical condition and if that policy or custom caused Defendant Kennedy's deliberate indifference; and (3) what amount of punitive damages and attorneys' fees are warranted in this case. (Doc. 119 at 2-4.) Defendants contend that trifurcating the trial will help to avoid confusion of the issues in this case. Defendants assert that Defendant Corizon can only be held liable if the jury first finds that Defendant Kennedy was deliberately indifferent to Loflin's medical needs. (<u>Id.</u>) Accordingly, Defendants allege that it would be most practical to consider whether Defendant Kennedy was deliberately indifferent to Loflin's medical needs before allowing the jury to consider whether that violation was a result of a policy or custom maintained by Defendant Corizon. (<u>Id.</u>)

After careful consideration, the Court disagrees with the fundamental premise of Defendants' argument and, accordingly,

2

denies Defendants' request to trifurcate the trial. Under Federal Rule of Civil Procedure 42(b), the court may, "for convenience, to avoid prejudice, or to expedite and economize, [] order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." When determining whether to try issues separately courts consider various factors including:

> (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

Kimberly-Clark Corp. v. James River Corp. of Va., 131 F.R.D. 607, 608-09 (N.D. Ga. 1989).

In this case, the Court finds that there is a substantial overlap between the facts that could potentially prove that Defendant Kennedy was deliberately indifferent to Loflin's medical condition and the facts supporting Plaintiffs' theory that Defendant Corizon is liable for maintaining a policy or custom to deny access to medical care in order to save money. Plaintiffs' case is premised on the theory that Defendant Kennedy made decisions to delay Loflin's access to medical care

3

because of Defendant Corizon's cost-saving policy. Accordingly, the Court does not see the benefit of separately trying these closely-related issues.

Moreover, the Court disagrees with Defendants' assertion that liability against Defendant Corizon can only be found if a jury first concludes that Defendant Kennedy was deliberately indifferent to Loflin's medical condition. In order to prove their claim against Defendant Corizon, Plaintiffs must be able "to show '(1) that [Loflin's] constitutional rights were violated; (2) that [Defendant Corizon] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.' " Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1349 (11th Cir. 2011) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)). Under the first prong, Plaintiffs are only required to prove that Loflin's constitutional rights were violated, not that Defendant Kennedy specifically violated Loflin's constitutional rights. As a result, trying the issue of Defendant Kennedy's liability separately from Defendant Corizon's liability would not provide any apparent benefit. In fact, the Court is concerned that trying the issues separately would actually cause more confusion of the issues.

While the Court will not trifurcate the trial, the Court will bifurcate this trial in order to allow the jury to separately consider Defendants' liability from the issue of punitive damages. At the pre-trial conference in this case, the parties expressly provided their consent to bifurcating the trial. Accordingly, the jury will only be permitted to hear evidence related to punitive damages after the jury considers the issue of Defendants' liability.

2. <u>Opinion Testimony Regarding Whether Defendants were "Deliberately Indifferent"</u>

Next, Defendants "anticipate that Plaintiffs may try to solicit opinions from witnesses regarding whether the defendants were deliberately indifferent to Matthew Loflin's medical needs." (Doc. 119 at 4.) Defendants assert that witnesses should not be permitted to offer their opinions as to whether Defendants were deliberately indifferent to Loflin's medical needs because that determination depends on a subjective inquiry into what the Defendants knew at the time they were providing care to Loflin. (<u>Id.</u> at 4-6.) Because the inquiry is subjective, Defendants contend that other witnesses cannot testify as to what Defendants knew at the time of the events of this case. (<u>Id.</u>) For example, Defendants cite that "witnesses who were not present for the conversations between Dr. Kennedy and Dr. Pugh

at issue in this case should not be permitted to opine what Dr. Kennedy was thinking based on other interactions." (Id. at 5-6.)

Although the Court generally agrees with Defendants' argument, the Court is unable to conclude at this time that any specific testimony should be excluded. Under the Federal Rules of Evidence, lay witnesses are not permitted to speculate and must base their testimony on their own interactions and perceptions. See Fed. R. Evid. 701. Moreover, the Court agrees that expert witnesses should not offer legal conclusions about whether Defendants Corizon or Kennedy were deliberately indifferent to Loflin's medical needs. See Fed. R. Evid. 702; see also Omar v. Babcock, 177 F. App'x 59, 59 n.5 (11th Cir. 2006)(upholding a district court's decision not to permit an expert to testify as to the state of mind of the defendants). Pursuant to Federal Rule of Evidence 704, however, an expert's "opinion is not objectionable just because it embraces an ultimate issue." Without the context of trial and the specific testimony, this Court is unable to say whether any given testimony will violate these general principles. Accordingly, the Court defers ruling on this issue.

### 3. Opinion Testimony Regarding an Alleged Pattern of Substandard Care

Next, Defendants raise concerns that "Plaintiffs will attempt to argue and introduce conclusory evidence in the form

or (sic.) an opinion that Corizon Health maintained a 'pattern' of substandard care." (Doc. 119 at 6.) Defendants contend that no witness should be permitted to offer conclusory opinions as to the legal issues in this case. (Id.) Instead, Defendants contend that Plaintiffs must offer "admissible evidence showing a significant number of substantially similar events to prove their case." (Id.) In response, Plaintiffs assert that they do not intend to introduce any impermissible evidence. (Doc. 120 at 5.) Plaintiffs, however, assert that Defendants have incorrectly stated that Plaintiffs must prove a pattern of substandard care in order to succeed at trial. (Id.) Instead, Plaintiffs argue that they are only required to show that Defendant Corizon maintained a policy or custom of deliberate indifference. (Id.)

As an initial matter, the Court pauses to address Plaintiffs' assertion that Defendants have mischaracterized what Plaintiffs are required to show at trial. In their response, Plaintiffs contend that if they "demonstrate to the jury's satisfaction that '[a]n act performed pursuant to a custom has not been formally approved by an appropriate decision maker' or that the custom or policy itself is unconstitutional, Corizon Health may fairly be subjected to liability." (Id.) Within this statement, Plaintiffs seem to suggest that they could prove that Defendant Corizon maintained a custom of denying access to medical care based on one isolated incident. To the extent that

Plaintiffs make this assertion, this interpretation of the law is incorrect. It is well established that "[a] single incident would not be so pervasive as to be a custom." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1330 n.6 (11th Cir. 2003). Rather, a plaintiff can establish the existence of a custom by showing such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991). If a plaintiff is unable to show a series of constitutional violations to establish a custom, the plaintiff may still be able to succeed by showing that Defendant Corizon implemented a policy that was itself unconstitutional. Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (citing Estate of Novack ex rel. Turbin v. Cty. of Wood, 226 F.3d 525, 531 (7th Cir. 2000)).

With respect to Defendants' request to limit witness testimony about an alleged pattern of substandard care, the Court is unable to fully rule on Defendants' request. At this point, Defendants have not provided any specific testimony for this Court's consideration. Without the context of trial or the specific testimony at issue, this Court defers ruling on Defendants' request. The parties are reminded, however, that the evidence at trial will be guided by the Federal Rules of Evidence.

4. <u>Arguments Amounting to Respondent Superior Liability Against Corizon</u>

Here, Defendants request that the Court should prohibit Plaintiffs from making any argument or allegation that Defendant Corizon can be liable under a theory of respondent superior. (Doc. 119 at 7-8.) Defendants assert that Defendant Corizon can only be held liable if Defendant Corizon maintains a pattern or custom of deliberate indifference. (<u>Id.</u>) While Defendants are correct that Defendant Corizon cannot be held liable under a theory of respondent superior, <u>Grech</u>, 335 F.3d at 1329, the Court cannot exclude any evidence at this time. Defendants have not pointed to any potential evidence for this Court's consideration. Moreover, as Plaintiffs correctly point out, evidence which shows that a Corizon employee was deliberately indifferent to an inmate's medical condition may be relevant to whether Defendant Corizon maintained a policy or custom of deliberate indifference. (Doc. 120 at 5-6.) Because the issues are closely related, the Court cannot exclude any evidence based on Defendants' request at this time and defers ruling on this issue until trial.

5. <u>Betty Riner Lawsuit</u>

Next, Defendants contend that Plaintiffs should not be permitted to introduce any evidence of an employment discrimination lawsuit filed by three former employees against

9

Defendant Corizon. (Doc. 119 at 8.) Defendants contend that admitting the pleadings would be impermissible hearsay and cumulative of witness testimony that could be provided by those employees at trial. (Id.) In response, Plaintiffs agree that this evidence should not be used in their case-in-chief. (Doc. 120 at 6.) Instead, Plaintiffs request that the Court allow Plaintiffs to admit the evidence at trial for impeachment or rebuttal purposes if necessary. (Id.) After careful consideration, the Court will grant Defendants' request and Plaintiffs will not be permitted to use this exhibit in their case-in-chief. Without the context of trial to guide this Court's consideration of how the exhibit could be used for impeachment purposes, however, the Court defers ruling on whether this exhibit would be permissible for impeachment or rebuttal purposes.

6. <u>Dr. Pugh's Declaration from Oregon</u>

Defendants request that Plaintiffs should be prohibited from admitting evidence from a declaration signed by Dr. Pugh in another case against Defendant Corizon in Oregon. (Doc. 119 at 8-9.) Defendants contend that the declaration is hearsay, cumulative, and prejudicial. (Id.) Defendants fear that Plaintiffs may use the declaration in an attempt to show the jury that there is another pending lawsuit against Defendant Corizon. (Id.) In response, Plaintiffs concede that they should

not admit the declaration in their case-in-chief, but request permission to use the evidence for rebuttal or impeachment evidence if necessary. (Doc. 120 at 6.) From this Court's limited understanding of how Plaintiffs intend to use the declaration at trial, the Court finds that the declaration is unlikely to be admissible at trial. In this Court's view, the declaration has little relevance to the facts of this case. Without the context of trial or knowing what information the declaration contains, the Court defers ruling on Defendants' request at this time. Plaintiffs may be able to show at trial that the evidence in the declaration is relevant in rebuttal or impeachment. The declaration, however, should not be used in Plaintiffs' case-in-chief.

### 7. Hearsay Testimony from Betty Riner

Defendants request that this Court not permit Betty Riner to provide any hearsay testimony in this case. (Doc. 119 at 9-10.) Defendants cite that Riner provided allegations in her depositions in which she based her opinions on things she heard from other people. (Id.) For their part, Plaintiffs contend that they do not intend to elicit any impermissible hearsay from Riner. (Doc. 120 at 6.) Accordingly, Defendants request is granted. The Court notes that impermissible hearsay will not be permitted at trial by any witness.

8.  <u>Allegations or Evidence about Virginia O'Neill</u>

Next, Defendants contend that Plaintiffs should not be permitted to admit any evidence related to Virginia O'Neill because she is no longer a defendant in this action. (Doc. 119 at 10-11.) Specifically, Defendants contend that evidence related to "whether people liked working for [Ms. O'Neill], whether people in the CCSO got along with Ms. O'Neill . . ., whether Ms. O'Neill was doing a 'good job,' and the circumstances of Ms. O'Neill['s] disengagement from her employment with Corizon Health" should not be introduced at trial. (<u>Id.</u>) For their part, Plaintiffs contend that they do not intend to introduce any impermissible evidence related to O'Neill. (Doc. 120 at 6.) Without the context of trial or more specifics about the evidence against O'Neill, the Court is unable to fully consider Defendants' request. The Court notes that, in accordance with the Federal Rules of Evidence, irrelevant evidence not related to the facts of this case will not be admitted at trial. Fed. R. Evid. 401; 402.

9.  <u>Evidence Against Corizon LLC</u>

Defendants request that this Court prohibit any evidence about Corizon LLC because there is no indication that the entity has anything to do with this case. (Doc. 119 at 11.) Plaintiffs have agreed not to admit any testimony about Corizon LLC. (Doc. 120 at 7.) Accordingly, Defendants' request is granted.

### 10.  Irrelevant Policies and Procedures

Here, Defendants request that the Court prohibit Plaintiffs from introducing evidence of policies not at issue in this case. (Doc. 119 at 11-12.) Defendants worry that Plaintiffs will offer the irrelevant policies to show that Defendant Corizon should be liable for general impropriety, not the specific policies at issue in this case. (Id.) Specifically, Defendants ask that Plaintiffs should be prohibited from mentioning Defendant Corizon's intake and screening process, which is at issue in another similar case. (Id.) For their part, Plaintiffs agree that only relevant policies and procedures should be discussed at trial. (Doc. 119 at 7.) While there appears to be no disagreement between the parties, the Court reminds the parties that the evidence at trial will be limited to ensure that issues only relevant to the death of Loflin will be considered by the jury. Accordingly, irrelevant information regarding policies, procedures, or otherwise will be excluded from the trial.

### 11.  Allegations of Alleged Understaffing

Next, Defendants contend that Plaintiffs should not be permitted to present evidence of an alleged pattern of understaffing at CCDC. (Doc. 119 at 12.) Defendants contend that none of the allegations in this case implicate any alleged staffing issues. (Id.) Moreover, Defendants contend that

deliberate indifference cannot be shown by establishing that the jail was understaffed. (Id.)

After careful consideration, the Court defers ruling on Defendants' request at this time. While the staffing of the jail is not directly implicated by the facts of this case, evidence of understaffing may be related to Plaintiffs' argument that Defendant Corizon maintained a policy or custom of deliberate indifference to the serious medical needs of jail inmates. Without the context of trial, the Court is unable to speculate as to how Plaintiffs will offer evidence of Defendant Corizon's alleged understaffing of the jail.

12. Arguments About Negligence

In their motion, Defendants contend that Plaintiffs should be prohibited from making any argument that Defendants Kennedy or Corizon should be liable because they were negligent in their care of Loflin. (Doc. 119 at 12-13.) In response, Plaintiffs assert that they have no intention of making any negligence-related argument. (Doc. 120 at 7.) While the parties appear to be in agreement, it is worth noting that there is no remaining claim of negligence in this case. To the extent that either party begins to make arguments related to negligence or the elements of a negligence, that argument is prohibited.

13. Lay Witness Opinions

Here, Defendants request that Plaintiffs be prohibited from offering improper opinions of lay witnesses. (Doc. 119 at 13.) Specifically, Defendants request that Plaintiff Belinda Maley "should not be permitted to testify that Corizon 'killed' her son and the like, and Ms. Kohne's opinions about whether Defendants provided 'good care' should be excluded." (Id.) Under Federal Rule of Evidence 701, a lay witness may testify in the form of an opinion if that opinion is "[1] rationally based on the witness's perception; [2] helpful to clearly understanding the witness's testimony or to determining a fact in issues; and [3] not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pursuant to Federal Rule of Evidence 701, the Court will allow testimony based on the witness's own perception. Without the context of trial and the witness testimony, the Court is unable to fully determine at this time whether each witness's testimony is based on their own perceptions and complies with the standard laid out in Federal Rule of Evidence 701.

14. Evidence of Corporate-Level Finances

In their motion, Defendants also assert that Plaintiffs should not be permitted to introduce evidence of Defendant Corizon's corporate-level finances or financial condition during Plaintiffs' case-in-chief. (Doc. 119 at 13.) Defendants assert

that this information is only relevant during the second phase of the trial when the jury is able to consider punitive damages. (Id.) In their response, Plaintiffs agree not to admit any evidence about Defendant Corizon's corporate-level finances until the second stage of the trial. (Doc. 120 at 8.) Accordingly, Defendants' request is granted.

15. Attorneys' Fee Determined by the Court if Plaintiffs Prevail

In the event that Plaintiffs are successful in proving Defendants' liability, the Court will determine the amount of attorneys' fees and costs that are warranted in this case. 42 U.S.C. § 1988(b).

16. Leading Questions on Direct

As is standard practice in this Court, leading questions will generally not be permitted on direct examination. Fed. R. Evid. 611.

17. Opinions or Reliance on Materials Not Previously Disclosed in Discovery or in the Expert Reports

Defendants request that this Court prohibit the use of any expert testimony at trial that was not properly disclosed in discovery or previously submitted expert reports. (Doc. 119 at 14-15.) Plaintiffs assert that they have no intention of admitting any expert testimony that was not properly disclosed. (Doc. 8.) It is typically this Court's standard practice to

exclude evidence that is not properly disclosed during discovery. Accordingly, Defendants' request is granted.

18. <u>Reasonable Degree of Medical Certainty</u>

Next, Defendants request that the Court limit the testimony of Plaintiffs' expert cardiologist, Charles Wickliffe. (Doc. 119 at 15-16.) Defendants suggest that Dr. Wickliffe's testimony regarding Loflin's chances of survival, prognosis and reasonable life expectancy should be limited because Dr. Wickliffe was unable to offer his opinions with a reasonable degree of medical certainty. (Doc. 119 at 15-16.) On February 8, 2018, this Court denied Defendants' motion seeking to limit the testimony of Dr. Wickliffe. (Doc. 100.) In that order, the Court found that Dr. Wickliffe was qualified to serve as an expert in this case. (<u>Id.</u>) To the extent that Defendants are attempting to relitigate the issues addressed in that order, Defendants' request is denied.

Additionally, the Court finds that Defendants have failed to undermine Dr. Wickliffe's ability to offer an opinion within a reasonable degree of medical certainty. This Court has reviewed Dr. Wickliffe's report (Doc. 69, Attach. 2 at 6-7) and deposition (Doc. 94, Attach. 5 at 21-22). In this Court's view, Dr. Wickliffe offers an opinion based on his review of the facts in this case that Loflin's chances for survival would have improved had he received proper treatment by March 26, 2014.

While the Court will not permit expert witnesses to speculate, Defendants have not shown that Dr. Wickliffe's expert opinion is based on speculation or not with a reasonable degree of medical certainty. Defendants are permitted to raise any concerns with the content of Dr. Wickliffe's testimony on cross-examination.

### 19. Liability Insurance

In their motion, Defendants request that Plaintiffs should be prohibited from introducing any evidence at trial about Defendants' insurance coverage. (Doc. 119 at 16.) Defendants contend that such information would be highly prejudicial. (Id.) Pursuant to Federal Rule of Evidence 411, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." The parties will be bound by this rule at trial.

### 20. Evidence of Loflin's Good Character

Next, Defendants argue that the Court should limit testimony from "Plaintiffs' witnesses stating that Mr. Loflin had a good character." (Doc. 119 at 16-17.) Defendants contend that this evidence is not relevant to the legal issues in this case. (Id.) Plaintiffs assert that evidence of Loflin's character is relevant to the determination of the potential damage award in this case. (Doc. 120 at 9-10.) After careful consideration, the Court agrees with Plaintiffs. The parties

will be permitted to present evidence of Loflin's character as it relates to a potential damage award in this case.

21.  Reptile Argument

Defendants contend that Plaintiffs should be prohibited from making any argument related to the "Reptile Theory." (Doc. 119 at 17-19.) Essentially, this theory is based on arguing that the jury should award damages in order to send a message to the defendant and because the potential harm caused by the defendant's actions poses a threat to society as a whole. (Id.) Defendants contend that this argument is improper and confuses the issues in this case. (Id.)

While Defendants' argument is again non-specific, the Court generally agrees with the premise of Defendants' argument. Both parties should limit their arguments and testimony to the relevant issues in this case. In this Court's view, any potential harm caused by Defendant Corizon to the greater society is not relevant to the issues in this case. Because Defendants have not offered any specific testimony for this Court's consideration, however, the Court must defer ruling on Defendants' motion at this time.

22.  The Golden Rule Argument

Relatedly, Defendants next argue that the Court should prevent Plaintiffs from asking the jury to determine liability in this case by placing themselves in the Plaintiffs' shoes.

19

(Doc. 119 at 19-20.) In this circuit, it is well established that parties are not permitted to ask the jury to reward damages by placing themselves in the shoes of the victim. <u>McNely v. Ocala Star Banner Corp.</u>, 99 F.3d 1068, 1071 (11th Cir. 1996). The parties will be bound by this rule at trial.

23. <u>Documents Not Produced in Discovery or in Pretrial Order</u>

Next, Defendants request that the Court prohibit the admission of any evidence that was not produced in discovery or in the pretrial order. (Doc. 119 at 21.) Despite their request, Defendants have not cited any specific evidence that may be introduced at trial. For their part, Plaintiffs concede that they do not intend to introduce any evidence that was not included in the pretrial order or discovery. (Doc. 120 at 11.) Accordingly, Defendants' motion with respect to this request is granted.

24. <u>Demonstrative Exhibits to Jury</u>

Defendants request that the Court not permit demonstrative exhibits to be sent back with the jury during deliberations. (Doc. 119 at 21.) Plaintiffs have agreed with Defendants' request. (Doc. 120 at 11.) Accordingly, no demonstrative exhibits will be sent with the jury during deliberations.

25. <u>Depositions or Other Discovery During Opening Statements</u>

Defendants request in their motion that Plaintiffs should not be permitted to "[r]ead[], play[], or refence[e] videotapes

of transcript excerpts or depositions to the jury in their opening statement" or use their opening statement to make improper arguments to the jury. (Doc. 119 at 21-22.) The Court agrees with Defendants that opening statements are not the proper forum to make arguments about the law to the jury. See also L.R. 83.22. Instead, opening arguments are an opportunity to explain to the jury "what you expect the evidence to show" throughout the case. Id. Accordingly, parties may reference evidence as necessary in order to explain what the evidence is expected to show at trial. The parties, however, will not be permitted to read from transcripts or show videotapes that have not be entered into evidence during their opening statements.

26. Improper and Prejudicial Voir Dire Statement Remarks

Defendants also request that the Court not permit Plaintiffs to ask any improper or prejudicial statements during voir dire, including improper hypothetical scenarios or references to the potential jury award in this case. (Doc. 119 at 23.) As is standard practice in this Court, the Court will conduct voir dire and will select questions from each parties' proposed voir dire questions for use during the process. No impermissible or improper questions from either party will be permitted.

27. Relative Wealth of the Parties

Next, Defendants request that the Court prohibit any evidence regarding the relative wealth of the parties at trial. (Doc. 119 at 23-24.) Defendants contend that the evidence is highly prejudicial, immaterial, and irrelevant. (Id.) After careful consideration, however, Defendants' request is overbroad. At trial the parties will not be permitted to introduce any information about Defendant Corizon's financial condition during the initial phase of the trial. This information would be irrelevant to the determination of Defendant Corizon's liability and the amount of compensatory damages to be awarded in this case. However, evidence of Defendant Corizon's financial condition is relevant to the determination of an amount of punitive damages during the second phase of the trial. Accordingly, the Court will permit this testimony during the second phase of the trial. In addition, the Court finds that evidence of Loflin's wages is relevant to the determination of compensatory damages in this case. The parties will be permitted to submit evidence of his earnings during the initial phase of the trial.

28. Settlement Discussions

The parties agree that there should be no reference to any settlement discussions that were made in an attempt to settle this case. (Doc. 119 at 24; Doc. 120 at 12.) Accordingly,

Defendants' request to exclude any evidence related to settlement discussions is granted.

29. Rule of Sequestration

The parties request that the Court exclude any witness from the courtroom who is not testifying. (Doc. 119 at 24; Doc. 120 at 12.) This is the Court's standard practice and, as a result, the parties' request is granted. Witnesses who may be called to testify will not be permitted to remain in the courtroom.

30. Evidence of Sympathy

Finally, Defendants contend that Plaintiffs should not be permitted to introduce any evidence of sympathy in this case. (Doc. 119 at 25.) Defendants contend that this evidence unfairly prejudices the proceedings and is irrelevant to the legal issues in this case. (Id.) Plaintiffs have stated that they have no intention of introducing evidence of sympathy at trial. (Doc. 120 at 12.) Accordingly, Plaintiffs will not be permitted to introduce evidence of sympathy that is not relevant to prove a fact at issue in this case.

SO ORDERED this 25th day of March 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA